[No. 2979.   Decided December 13, 1900.]

JAMES RUSH, *Respondent*, v. SPOKANE FALLS AND
NORTHERN RAILWAY COMPANY, *Appellant*.

ACTION FOR NEGLIGENCE—PLEADING—ALLEGATION OF SEVERAL
ACTS OF NEGLIGENCE—EVIDENCE NOT RESTRICTED TO ONE.

In an action to recover for injuries resulting from defend-
ant's negligence, the failure of plaintiff to prove some of the acts
of negligence charged in the complaint does not warrant the dis-
charge of the jury and a directed verdict in favor of the defend-
ant, when there are allegations in the complaint of other matters
of negligence sufficient to warrant a verdict in plaintiff's favor,
and there is evidence to substantiate them.

SAME—DEFECTIVE APPLIANCES—QUESTION FOR JURY.

Whether a locomotive engine was defective in the matter of
emitting sparks was a question for the jury, where the undisputed
testimony showed "there were a lot of sparks flying all the
time" from the engine; and from such fact alone, in the absence
of any other known cause, the jury might be warranted in in-
ferring that an explosion of dynamite exposed in an open caboose
was occasioned by sparks therefrom, although no one saw a
single spark come into the caboose.

MASTER AND SERVANT—VICE PRINCIPAL—DANGEROUS EXPLOSIVES.

Although employees of a common master may be fellow ser-
vants, when engaged in loading and unloading cars in the or-
dinary course of their employment, yet where one of them is
made the custodian of dangerous instruments, such as dynamite,
for the time being he represents the master, to whom is im-
putable any negligence on his part in that capacity.

SAME—LIABILITY OF MASTER—INSTRUCTIONS.

When one of the questions to be determined at a trial was
whether the defendant was guilty of negligence in placing an un-
covered box of dynamite in an open car, exposed to flying sparks
from the engine, and the testimony shows that plaintiff, who
was a servant of defendant and riding in the car, had no knowl-
edge of the presence of the dynamite therein, an instruction is
relevant to the pleadings and evidence, when it charges the jury
that before using or handling a dangerous explosive it is the duty
of the master to ascertain and make known to his servants the

Syllabus.                          [23 Wash.

dangers to be reasonably apprehended from its use; and the ig-
norance of the master as to the danger to be apprehended from
its use, or the proper method of handling it, will furnish no ex-
cuse, if the master, by the exercise of such reasonable diligence
and ordinary care as a reasonable and prudent man under like
circumstances would use, could have obtained such knowledge.

SAME.

An instruction that, if the jury believe from the evidence it was
dangerous to ship and handle dynamite in the caboose car with
the doors open, and that such danger could be avoided and greatly
reduced by shipping it in some safer way which was in easy reach
of the master, it was a duty the master owed his servants to
adopt such method of shipping such dynamite as was reasonably
safe, and any other method which was not reasonably safe would
not excuse the master for injuries to the servant resulting there-
from, is not objectionable on the ground that it does not appear
from the pleadings and proof that a safer method existed, or
that, if it did, that it was within the reach of defendant, since
the evidence shows that the dynamite was in an open box, cov-
ered merely by a paper, which ignited from a spark, while it is
plainly apparent the danger would have been greatly reduced by
putting an ordinary wooden cover on the box, which was pre-
sumably within the reach of defendant.

SAME—SAFE PLACE TO WORK.

When a railway company furnishes an employee a caboose
in which to ride to and from work it impliedly engages with him
that the caboose shall be reasonably safe for that purpose, hence,
where the employee was injured while so riding in the caboose
through the railway company's negligence, an instruction is
within the issues of the case, where it charges the jury that
the master, in employing a servant, impliedly engages with him
that the place in which he is to work, and the tools, machinery,
and surroundings of his work, or in which he is to be placed,
shall be reasonably safe.       ,

SAME—LIABILITY FOR EXPOSING SERVANT TO DANGEROUS EXPLO-
    SIVES—HIGHEST DEGREE OF CARE NECESSARY.

In an action by a servant to recover for injuries received
through the negligence of the master in carrying a box of dyna-
mite without sufficient covering in an open car, whereby the
dynamite was exploded by ignition from a flying spark setting
fire to paper covering it, a requested instruction that if the jury
find that the co-employees of plaintiff, while riding in the car

were smoking cigarettes and scuffling, and that the explosion might have been occasioned from the fire in smoking cigarettes, and that there was as much probability that the explosion happened in that way as from sparks from the engine, then they should find for defendant, was properly refused, although there was evidence that the men had been smoking and scuffling, since it was the duty of defendant to exercise the highest degree of care and diligence in the custody of dynamite, in order to protect its servants from injuries which would probably and naturally result from an explosion of it.

INSTRUCTIONS—INCOMPLETENESS—REMEDY.

Where an instruction as given states the law correctly, but does not go far enough in explaining the application of the law to the case on trial, the remedy of the party objecting is not to except to the instruction, but to request the court for further instructions upon the point desired.

SAME—EXCEPTION TO WHOLE—EFFECT WHEN ERRONEOUS IN PART ONLY.

Where an exception to an instruction is not limited to the part thereof that is faulty, but goes to the entire instruction, which, as a whole, is not subject to the objection urged against it, no error can be predicated upon the giving of the instruction.

EXCESSIVE DAMAGES.

A verdict for $1,200 for injuries received through being stunned and bruised as the result of an explosion is not so large as to indicate passion or prejudice on the part of the jury, and will not be set aside as excessive.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge.    Affirmed.

*Albert Allen and Jay H. Adams,* for appellant.

*William H. Ludden (James Z. Moore,* of counsel), for respondent.

The opinion of the court was delivered by

ANDERS, J.—In April, 1897, the respondent, James Rush, was in the employ of the Spokane Falls & Northern Railway Company, appellant, in the capacity of a

common laborer, and was engaged with others in riprapping and repairing its road bed in the vicinity of Marcus and Bossburg, in this state. It was the duty of the respondent, in the course of his employment, to load and unload rock, which was transported on appellant's cars from a quarry near the railroad track to places where it was needed. Dynamite or giant powder was used in blasting rock at the quarry, but the respondent had nothing to do with blasting or with handling or using explosives. It was the custom of the railway company to convey its employees from their boarding camp to their work on its cars, and, accordingly, on April 28, 1897, a caboose attached to an engine was taken to the camp where the respondent and from ten to fourteen other laborers were boarding and lodging for the purpose of transporting them to the place where they were required to work on that day. Before the train reached the place where these workmen were, a box containing dynamite and fuses had been placed in the caboose near one of its two side doors (both of which were left open) by one Harklerode, who was at the time the foreman of this gang of laborers. The fuse was wrapped in paper and laid on top of the giant powder, and the box containing both of these substances was left uncovered. After the respondent and the other men of his gang, their foreman, and Rogers, the superintendent of the work, had boarded the caboose and proceeded several miles towards their destination, it was discovered by some one in the car that the paper covering the fuse was on fire. When the men became aware of the danger to which they were thus exposed, they were greatly alarmed and confused and instantly undertook to get off the caboose. Some of them, it appears, jumped off at once, regardless of consequences. At the time the fire was discovered, the train was running at its usual rate of speed,

but it was "slowed up" almost immediately thereafter. On discovering his perilous situation, the respondent passed out of the car by way of the rear door and sat down on the step or platform, intending to jump off as soon as the speed of the car would permit him to do so with safety. While the repondent was in that position and the train still in motion, the powder exploded with such violence that the top and sides of the car were entirely destroyed, and the respondent was thrown upon the ground, and thereby stunned and bruised and, as he claims, otherwise injured. This action was instituted to recover damages for the injuries thus sustained by the respondent, on the theory that the explosion was caused by the negligence of the appellant.

The particular acts of negligence or breaches of duty charged against the appellant are set forth in the complaint as follows:

"6. That the engine to which said caboose was attached was in a defective and wornout condition, and was so negligently and carelessly managed by defendant that it emitted large volumes of smoke and sparks from the smoke-stack and furnace thereof; that the use of said engine in such condition and in the proximity to said explosive substance was gross carelessness on the part of said defendant; that if defendant had exercised ordinary care in and about the construction and care of said engine, said sparks would not have been emitted, and the explosion hereinafter mentioned would not have occurred.

7. That on the said 28th day of April, 1897, while the plaintiff was on board of said caboose and riding thereon to his place of labor, as directed by said defendant, said explosive substance was ignited, by the sparks and fire emitted by said engine, and without warning, and without plaintiff having an opportunity of saving himself from injury, the said explosive substance exploded with terrific force and violence and caused the injury to plaintiff herein mentioned; and that said explo-

sion, and the injury received by plaintiff hereinafter mentioned, were caused by gross carelessness and negligence of the defendant, and without negligence or fault on the part of this plaintiff.

8.    That said explosive substance, giant powder or dynamite, was concealed in said caboose, and covered up in such a way by defendant that plaintiff was unable to learn or discover that the same was an explosive substance; and the said explosive substances, and the manner in which they were covered up and concealed from this plaintiff, constituted a latent danger, then well known to the defendant but unknown to the plaintiff; and while said latent danger existed on said caboose as aforesaid the said defendant ordered plaintiff on board of said caboose, and placed him in close proximity to said explosive substance, and put him in imminent danger of his life. That the defendant was grossly careless and negligent in storing and carrying said explosive substance in said caboose, and in ordering plaintiff near it without plaintiff's knowledge, and in using a defective engine, and in the negligent and careless management of said engine; and that defendant was grossly careless and negligent in not warning plaintiff of the danger to which he was exposed; and defendant was negligent and careless in allowing said explosive substance to remain in a place where it was probable and likely that it would be exploded by sparks coming from said engine, which would be likely to fall therein and thereon."

The appellant, in its answer, admitted that it was a corporation operating a railway as a common carrier, as alleged by respondent, but denied all the remaining averments of the complaint. And by way of defense, the appellant alleged that if the respondent was injured in any manner while in the employ of the appellant, such injury was occasioned by his own want of care and contributory fault, and that any such injury so received was the result of the ordinary risk which the respondent assumed by reason of his employment. The new matter set

up in the answer was controverted by the reply. A trial of the issues involved was had to a jury, resulting in a verdict and judgment for the plaintiff (respondent here) for $1,200.

At the close of respondent's testimony the appellant challenged the legal sufficiency of the evidence, and moved the court to take the case from the jury in accordance with § 4994, Bal. Code. This motion was denied, and the appellant excepted. The motion was renewed at the close of the evidence, and again denied by the court, and the appellant now contends that the trial court erred in refusing to discharge the jury and direct the entry of judgment in favor of appellant, as requested. In support of this contention it is urged that there was absolutely no proof at the trial of the particular negligence with which appellant was charged in the complaint, and that there was, therefore, as a matter of fact, nothing for the jury to determine. In proof of appellant's position it is asserted that paragraph 6 of the complaint not only designates the specific negligence on the part of the appellant which is relied on for a recovery, but avers that such negligence was the proximate and only cause of the explosion which resulted in the injury to the respondent; and that, in view of these particular allegations of negligence, all the other averments of the complaint respecting the placing of the giant powder in the caboose, and the want of knowledge on the part of the respondent of its presence there, are mere matters of inducement and are made to show that the respondent did not assume the risk of an explosion by riding in the caboose. This objection was made and decided adversely to the contention of the appellant in *Allend v. Spokane Falls & Northern Ry. Co.*, 21 Wash. 324 (58 Pac. 244), in which case the plaintiff sued the appellant here to recover damages occasioned

by the same explosion, and in which the complaint contained substantially the same allegations of negligence as are set forth in the complaint herein, and now under consideration.   In that case it was held that the plaintiff was not precluded by such allegations as those set out in paragraph 6 of the complaint from proving any other negligence alleged in the complaint.   That case is decisive of the point here in question, and no further argument of the proposition is necessary.

It is true, as claimed by appellant, that there was no proof whatever at the trial that the engine in question was negligently managed, but there was certainly some proof which, unexplained as it was, tended to show that it was in a defective condition; the undisputed testimony being that "there were a lot of sparks flying all the time" from the engine.   It is claimed, however, that, inasmuch as there was no evidence that any one saw a single spark from the engine come into the caboose or fall upon the paper which was ignited in the box of dynamite, no inference that the locomotive engine was defective could be drawn from the mere fact that it emitted sparks.   It is, we think, a sufficient answer to this proposition to simply observe that that was a question for the jury to determine, in view of all the circumstances, under proper instructions by the court.   But it is further insisted that, even if it be true that the emission of sparks raised a presumption that the locomotive was defective, still no actionable negligence is made to appear in this case, for the reason that the acts of Harklerode and other employees of the appellant were those of a fellow servant, for which the railway company is not responsible.   For the reasons given in the opinion in the *Allend Case,* this position is entirely untenable.   Even if it were conceded that Harklerode was a fellow servant with the respondent when en-

gaged in loading and unloading cars in the ordinary course of his employment, yet it would by no means necessarily follow that he was such fellow servant while acting as custodian of dangerous instruments, such as dynamite. In that capacity he undoubtedly represented the appellant, and his negligence was legally imputable to the appellant.

The court instructed the jury to the effect that before using or handling a dangerous explosive it is the duty of the master to ascertain and make known to his servants the dangers  to be reasonably apprehended from its use, and the proper method of handling it with reasonable safety; and the ignorance of the master as to the danger to be apprehended from its use or the proper method of handling it will furnish no excuse, if the master, by the exercise of such reasonable diligence and ordinary care as a reasonable and prudent man under like circumstances would use, could have obtained such knowledge.   That this instruction announced the law correctly, as a general proposition, is not disputed, but appellant insists that it was misleading and, therefore, erroneous, because it was neither applicable to the pleadings nor to the testimony adduced at the trial.   It is no doubt true, as appellant contends, that the instructions of the court to the jury should be relevant to the issues and pertinent to the evidence in the case; and the question to be determined is whether the instruction in question is so clearly violative of this settled rule as to warrant the reversal of the judgment.   We are not satisfied that it is.   One of the principal questions for determination at the trial in the court below was whether the appellant was guilty of negligence in placing the box of dynamite in the car, in the place and in the condition above mentioned, and, in order to enable the jury to determine that question properly, it

was necessary for the court to instruct them as to the duty of the appellant to its servants before using or handling dangerous explosives. It is admitted that the respondent and the other men who were with him in the caboose were appellant's servants, and the testimony shows that the respondent was not informed as to the presence of the dynamite in the car, and had no knowledge of it until the fire was discovered. Upon this state of facts it can hardly be said that this instruction was inapplicable to the pleadings or to the evidence.

Instruction number 2 given by the court to the jury is to the effect that, if the jury believe from the evidence that it was dangerous to ship and handle dynamite in the caboose car with the doors open, and that such danger could be avoided and greatly reduced by shipping it in some safer way which was in easy reach of the master, and that the existence of such danger and the means of avoiding or reducing it were known to, or could have been known by, the master by the exercise of reasonable care and diligence, it was the duty the master owed his servants to adopt such method of shipping such dynamite as was reasonably safe; and any other method which was not reasonably safe will not excuse the master for injuries to the servant resulting therefrom. It is urged that this instruction is erroneous for the reason that it does not appear from the allegations or proof that any safer method existed for handling or shipping dynamite or giant powder than that made use of in the case at bar, or that, if any safer way existed, it was within the reach of the railway company. We are unable to discover any merit in appellant's criticism of this instruction. It would be difficult to imagine a more unsafe method of shipping dynamite than that adopted in this instance by the appellant. It is perfectly apparent that the dan-

ger of an explosion would have been greatly reduced, if not absolutely avoided, by putting an ordinary wooden cover on the box, and which was presumably within reach of the appellant.

Error is also predicated upon the third instruction given to the jury. In that instruction the jury were charged that the servant assumes the ordinary risk incident to the service after the master has used such care as a reasonable and prudent man would exercise under like circumstances, when using dynamite or giant powder, for the safety and protection of the servant, commensurate with the danger to be reasonably apprehended from the service; and if the master fails to use such care and caution, and an injury results therefrom, it is not a risk incident to the employment, and the master is liable therefor, unless the danger was open and apparent, or the servant had actual knowledge thereof. It is not contended that the court did not state the law correctly in this instruction, but it is claimed that it should have gone further, and explained to the jury the application of the law to the case on trial in view of the pleadings and evidence. All that need be said in answer to this objection is that, if appellant desired further instructions upon this point, it should have requested the court to give them at the proper time.

It is also claimed that the court erred in charging the jury that in using high, dangerous explosives, the master owed a duty to the servant to employ experienced agents who knew the danger ordinarily incident to its use, and the proper method of manipulating it with reasonable safety, and have the servant whose duty it is to come in contact therewith properly instructed and informed as to such danger. It is urged by the appellant that this instruction is objectionable for the reason that

there is no allegation or proof respecting the particular matters therein mentioned. Had the appellant limited his exception at the trial to that part of instruction numbered four here complained of, there would be more force in its contention. But its exception went to the entire instruction, which, as a whole, is not subject to the only objection urged against it, namely, that it is outside of the case as made before the jury.

Nor do we see any substantial merit in appellant's objection to that part of the seventh instruction wherein the jury were told that if they believed from the evidence that said dynamite, by the negligence of the defendant railway company, was exploded without any fault of this plaintiff, and that the plaintiff sustained injuries by reason of such explosion, then they should find a verdict for the plaintiff. The contention that the court erred in giving this instruction is based solely on the proposition that it failed therein, or elsewhere, to define the negligence for which the appellant would be liable in the case at bar. This is but another instance of an objection, not to what the court did say to the jury, but to what it did not; and we have already pointed out the remedy which ought to be pursued in such cases. See, also, *Allend v. Spokane Falls & N. Ry. Co., supra.*

It is further contended that the court erred in charging the jury that the master, in employing a servant, impliedly engages with him that the place in which he is to work, and the tools, machinery, and surroundings of his work, or in which he is to be placed, shall be reasonably safe. In support of this contention it is urged that the question whether the respondent had been furnished with a safe place in which to do his work was in no wise involved in the case. It must be conceded, as claimed by appellant's counsel, that the respondent, when he was

riding in the caboose, was not in a place provided him wherein to work; but it was, nevertheless, a place where he had a right to be at the time, and we think it is quite clear that when the appellant furnished him a caboose in which to ride it impliedly engaged with him, as the learned trial court observed, that it was "reasonably safe" for that purpose.

The instruction given to the jury upon the question of fellow servants is also complained of, but, as what we have already said upon that subject disposes of the objection, no further comment is necessary.

There was some testimony upon the trial to the effect that before the explosion in question occurred some of the men who were in the caboose were smoking cigarettes and scuffling, but whether these men were near the box of dynamite or in some other part of the caboose at the time is not disclosed by the evidence. In view of this testimony the appellant requested the court to charge the jury that:

"If you find from the evidence that the co-employees of the plaintiff, while riding in the caboose where the giant powder or other explosive was being carried, and that some of the co-employees or fellow servants of plaintiff were smoking cigarettes in such caboose and scuffling therein, and that the said explosive might have become ignited from the fire in smoking cigarettes, and that there is as much probability that the explosion happened in that way as from sparks from the engine, then you should find for the defendant."

The court refused to instruct the jury as thus requested, and this ruling of the court is assigned as error. At first blush we were inclined to the opinion that this instruction should have been given as requested, and that the refusing to give it was prejudicial error; but upon

further reflection, and in view of the duty imposed by law upon those who use or have the custody of dangerous instruments or agencies to exercise the greatest care to prevent others from being injured thereby, we have concluded that the request was properly refused. According to the better authorities, it was the duty of the railway company to exercise the highest degree of care and diligence in the custody of the dynamite, in order to protect those who were in the caboose from injuries which would probably and naturally result from an explosion of it, and, not having done so, it must be held liable for the consequences of its want of care.

It is said by Shearman & Redfield, in § 154 of their work on Negligence (5th ed.), that:

"  *  *  *  a master who entrusts a servant with the charge of some inherently dangerous thing (e. g., an explosive) is responsible for the omission of the servant to keep it safely; and, therefore, for his malicious use of it for mischievous purposes."

And in *Railway Co. v. Shields,* 47 Ohio St. 387 (24 N. E. 658), it was held (quoting from the syllabus, which correctly states the conclusions of the court) that: ·

"The law requires of those who use dangerous agencies in the prosecution of their business to observe the greatest care in the custody and use of them. This duty cannot be shifted by the master from himself to his servants, so as to exonerate him from the negligence of the servant in the use and custody of them. Where they are so entrusted, the proper custody, as well as the use of them, becomes a part of the servant's employment by the master, and his negligence in either regard is imputable to' the master, in an action by one injured thereby."

In that case the railway company was held liable for injury to a small boy, caused by the explosion of a torpedo negligently and wantonly left on its track by one

of its servants at a place where children and others living along the line of the track were in the habit of passing with the knowledge and acquiescence of the company. The torpedo was picked up by one of the companions of the plaintiff and caused to be exploded by hitting it.

In the well considered case of *Powers v. Harlow,* 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), in which the opinion of the court was delivered by Judge COOLEY, an owner of land, was held liable for injuries occasioned to a child by the explosion of a dynamite cartridge which he had left in an open shed on his premises in a box of sawdust, and which the child discovered and exploded by striking it with a rock. And in *Tissue v. Baltimore & O. R. R. Co.,* 112 Pa. St. 91 (3 Atl. 667, 56 Am. Rep. 310), it was ruled that it is the duty of the master to know, as far as it is possible to know, the character of such material as dynamite which he places in the hands of his agents; and, if he negligently places it in such a position as to expose his servants to a danger to which they might not be exposed, he is liable for any damages resulting from such negligence. And it was there held that it was a question for the jury to determine whether it was negligence on the part of the railroad company to permit a large quantity of dynamite to be stored in such a position that an accidental explosion of it might result in death or injury to its servants. In that case a servant of the defendant company was killed by the explosion of dynamite which was used in the business of the defendant and stored near the railroad track where the servant was required to work. What caused the explosion was not disclosed by the evidence, and the trial court directed a verdict for the defendant, but on appeal to the supreme court the judgment was reversed. See, also, *Allison v. Western N. C. R. R. Co.,* 64 N. C. 382.

Although it appears to us from the evidence that the jury was somewhat liberal in awarding damages to the respondent, the amount is not so large as to indicate passion or prejudice on their part, and we therefore do not feel at liberty to disturb the verdict on the ground of excessive damages.

It is claimed by appellant that the court erred in the reception and rejection of testimony during the trial, but we are of the opinion that the objection to the ruling of the court in that regard is not well taken.

The judgment is affirmed.

REAVIS and FULLERTON, JJ., concur.

DUNBAR, C. J. (concurring). I am unable to understand the application of the authorities cited in the opinion to the instruction last commented upon. It seems to me that the quotations from Shearman & Redfield and from the case of *Railway Co. v. Shields* amount to nothing more than an announcement of the general rule that the master is liable for the negligence of the servant, just as he would be if a conductor negligently operated a train. In such a case the custody and use of the train become a part of the servant's employment by the master, and the master cannot escape responsibility to one who is injured. The same may be said of *Powers v. Harlow, supra.* In none of these cases is the question of fellow servant involved. The plaintiffs who were injured were all strangers, and the rule is laid down with reference to the responsibilities of the masters to strangers. *Tissue v. Baltimore & O. R. Co.* bears more nearly on the question involved, but it does not seem to me that it is exactly in point, for it does not appear there that the explosion was caused by the action of a fellow servant. But the rule is announced that the company is responsible

to its servants when it permits a dangerous explosive to be placed in such quantity and position that an accidental explosion may result, and that the master will be responsible to his servant for damages arising from such negligent placing.

I think, however, that any one who handles dangerous explosives should be held to the highest degree of care; that he should be as careful of the safety of his servants as of the safety of strangers, and that when the defendant shipped the powerful explosive which it did in this case in the manner which the testimony indicates, without sufficient covering, it was guilty of wilful negligence, and ought to be held responsible for the injuries inflicted upon the plaintiff in this case, even if it be conceded that it was the negligent act of a fellow servant which caused the explosion, when it is shown, as it is in this case, that the plaintiff was not aware of the exposed condition of the dynamite. The duty should not be imposed upon him to contemplate the existence of such a hidden danger, or to guard against it.

For this reason I concur in the judgment announced.