# CHARLESTON.

### MERRILL v. MARIETTA TORPEDO CO.

Submitted February 20, 1917.   Decided February 27, 1917.

1. PLEADING—*Amendment—New Cause of Action.*

   Amendment of a declaration in trespass by adding thereto additional counts, which aver with greater particularity and precision than was done in the original declaration, the duty of defendant and the negligence causing the injury complained of, and increases the damages, is no departure from the original cause of action. (p. 675).

2. APPEAL AND ERROR—*Harmless Error—Opinion Evidence.*

   A party is not prejudiced by the opinion evidence of witnesses, not competent as experts, if their opinions coincide with the opinions of the experts testifying for the opposite party. (p. 675).

3. EVIDENCE—*Admissibility—Photographs.*

Photographs of a building and its surroundings, taken after an' explosion of ·nitro-glycerin causing its wreck, are admissible to show the effect of the explosion, if identified either by the artist who took them or by some other person familiar with the scene. (p. 676).

4. EXPLOSIVES—*Evidence—Relevancy.*

Where it is shown that another person, working nearby, was instantly killed by an explosion that injured plaintiff, it is permissible to prove on what part of the body of deceased the fatal wound appeared.   (p. 677).

· 5. SAME—*Care Required.*

The following instruction, applicable to the facts in this case, is approved: ''The jury are further instructed that a person in the possession or control of nitro-glycerin designed to be used by him is bound to the highest degree of care to take every reasonable precaution to prevent explosion.   (p. 677).

6. MASTER AND SERVANT—*Workmen's Compensation—Right of Action Against Third Person.·*

An employe who receives compensation for an injury from the workmen's compensation fund, is not thereby estopped to sue a third person, not his employer, whose negligence caused his injury. (p. 678).

7. SAME—*Injury to Third Person—Disobedience of Instructions.*

The negligent performance of an act done within the scope of the servant's employment, causing injury to a stranger, renders the master liable. · Private rules and instructions, prescribed by the master to govern his servant in the performance of his duty, do not excuse the master.   (p. 678).

8. NEW TRIAL—*Newly Discovered Evidence—Cumulative Evidence— Impeaching Evidence.*

After-discovered evidence which is only cumulative and not of such character as will likely produce a different result on a new trial, or which simply tends to impeach the testimony of a witness, does not warrant setting aside a verdict.   (p. 680). ·,

Error to Circuit Court, Roane County.

Action by Edward P. Merrill against the Marietta Torpedo Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Pendleton, Mathews & Bell,* for plaintiff in error.

*Ryan & Boggess* and *Chas. E. Hogg,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff was employed by the Ohio Fuel Oil Company as a well driller and, on the 30th of March, 1914, while preparing to measure the depth of the well, preparatory to having it shot, he was injured by an accidental explosion of nitro-glycerin, and in an action for the injury recovered a verdict and judgment against the Marietta Torpedo Company for $5,000. By this writ of error it seeks reversal of the judgment.

Defendant is a corporation, engaged in manufacturing nitro-glycerin and shooting oil wells. It undertook for the Ohio Fuel Oil Company to shoot the well in question, known as "Jacob Reynolds Well No. 3." It sent William Norris, one of its employes, to do the work. He arrived at the well in the afternoon of March 30th, with forty quarts of nitro-glycerin put up in eight-quart cans. The fluid had to be transferred to another vessel, called a torpedo, lowered to the bottom of the well and exploded. This process is understood among oil men as "shooting" a well. Norris brought the nitro-glycerin to the well in a spring wagon, left it about sixty feet from the engine, which operated the drill, unhitched his horses from the wagon and tied them at a point farther away. It was necessary to measure the depth of the well to ascertain how far to lower the torpedo before exploding it, and plaintiff was assisting in making the necessary preparations to take the measurement when he was injured. The nitro-glycerin was frozen and it was necessary to thaw it out before it could be put into the torpedo. It is proven, and not controverted that the usual method of thawing it is to immerse the cans in water, which has first been heated to a temperature of from 120° to 160°. Plaintiff and Clark McClain, his fellow servant, got a barrel at the derrick, which stood some distance away from the engine, and took it to the engine shed, removed a board from the side of the shed, and placed the barrel so that the bottom rested partly on the floor of the engine shed and partly on a board walk on the

outside, but on the same level with the floor. Norris and Mc-Clain then got some pieces of steam-pipe and connected the engine with the barrel, by means of a joint or ell extending it down to the bottom of the barrel for the purpose of heating the water. While they were thus engaged plaintiff says he filled the barrel with water and went to the derrick. After the pipe was arranged, Norris says, McClain turned the steam into the barrel and, in the meantime, he went to his wagon, got two cans of nitro-glycerin and carried·them down to the engine and placed them on the ground between the barrel and a large water tank nearby, about three or four feet from the barrel and about two feet from the tank. The cans were about sixteen inches long, and he swears he laid them down, so they could not fall over, and then examined the water. Finding it warm enough, he says he told Mc-Clain to cut off the steam and remove the pipe from the barrel, and immediately returned to the wagon to get more nitro-glycerin, so that he could thaw it all at one time. Just as he got to the wagon and had picked up two more cans, the explosion occurred at the engine shed. McClain was killed instantly and plaintiff was severely injured by it. The only eye witnesses to what occurred about the time of the accident are plaintiff and Norris. They differ materially on the vital point as to whether the nitro-glycerin exploded·on the ground or in the barrel. According to plaintiff's testimony McClain was at the derrick and returned with him to the engine, after two cans had been placed in the barrel of water and while the steam was still escaping into it. He says, when he got back to the engine, he saw two cans of nitro-glycerin suspended in the barrel by strings or pieces of rope, tied to nails driven in the top of the barrel staves, and noticed the water bubbling up in the barrel; that he went to the fly wheel of the engine and was preparing to attach some clamps to it, preparatory to unwinding the measuring line to get the depth of the well; that he had sent McClain around to the tool box, on the opposite side of the engine, to get a wrench; that there was a part of the clamp he did not understand, and just as he was about to call to Norris, who was then at the wagon, to ask him how to use it, the explosion occurred. Mr. Norris is

equally positive in his testimony .that he did not place the cans in the barrel but laid them carefully on the ground, and returned to the wagon to get two more cans in order to thaw all of the nitro-glycerin at once; that, after he placed the cans on the ground, he examined the water and finding it of the proper temperature, he told McClain to cut off the steam and take the pipe out of the barrel; that he had attached the joint of pipe that went down in the barrel with his hands, and that McClain was disconnecting it with his hands as he was returning to the wagon. It is proven and not denied that Mr. Norris had had an experience in the dangerous work of shooting wells, for a period of four years and in that time had shot about four hundred wells; that, before being entrusted with this hazardous work he had had an experience and training in the factory for eight years. His competency is fully proven, and according to his own testimony he was abundantly cautious on this occasion. But there is no evidence to prove what knowledge or experience, if any, McClain had with respect to the degree of care required in working about so dangerous an agency as nitro-glycerin.

The plaintiff's theory is that the cans were immersed in the barrel of cold water and the steam then turned into it, and that the action of the steam produced .such commotion in the water as to cause the cans to strike against each other or against the sides of the barrel with sufficient force to produce the explosion. On that theory, to prove which there is ample evidence to.go to the jury, defendant is liable, for it is clearly proven that such method of thawing nitro-glycerin is unusual and dangerous and, therefore, a negligent way of handling it.

On the other hand, defendant's theory is that its agent Norris was careful and competent; that he was very careful on this occasion and placed the two cans of nitro-glycerin on the ground and did not place them in the barrel; that he told McClain to cut off the steam and disconnect the pipes, a work not attended with any danger; that the explosion was caused by his carelessly dropping or throwing something on the cans as they lay upon the ground; and that his act, being the act of plaintiff's fellow servant, it is not liable. Plaintiff and

McClain were fellow servants, both being employed by the Ohio Fuel Oil Company, and neither of them was a fellow servant with Norris. He was employed by defendant and sent out to do a particularly dangerous work. Although plaintiff admits it was a part of his duty, according to the custom among well drillers, to help take the measurement of the well and prepare the water for thawing the nitro-glycerin, it was no part of his duty to assist in handling the nitro-glycerin itself, and notwithstanding he says he saw the nitro-glycerin in the barrel and the water in commotion, he is not chargeable with negligence, because he says he did not know that was a dangerous way to thaw it, although he does say he never saw it thawed in that manner before. Knowledge of the danger is essential to charge a person with assumption of its risk.

There is ample evidence to support either theory of the case, but it is very conflicting. Plaintiff and defendant's agent Norris, while they agree in respect to many unimportant matters, are equally positive in their widely different statements respecting the vital fact which is determinative of the question of negligence; that is, did the explosion occur in the barrel while the steam from the engine was flowing into it, or did it occur on the ground where Norris says he carefully placed the cans? The jury alone were authorized to determine this vital question from the conflicting testimony, and, in view of some of defendant's instructions which the court gave, the effect of which was to tell the jury that if they believed defendant's theory, they should find in its favor, it is very clear that they chose to accept plaintiff's theory of the case. According to plaintiff's testimony, McClain could not have been the person who suspended the cans in the barrel, for he swears McClain was with him at the derrick, and returned with him to the engine just before the explosion.

The court instructed the jury that, if they believed Norris carried the two cans of nitro-glycerin to the place where it was to be thawed and carefully laid it on the ground and, while he was away, they were exploded by some third person or by some other agency over which he had no control, the

defendant was not liable. It also instructed them, if they believed from the evidence the cause of the explosion was wholly a matter of conjecture and doubt, they must find for the defendant. So that, in reaching their verdict, the jury must have believed plaintiff's testimony and disbelieved the testimony of Mr. Norris.

Plaintiff was permitted to amend his declaration, and did so by adding thereto five additional counts, and by enlarging his damages to $20,000, instead of $10,000 as in his original declaration, and the overruling of defendant's demurrer to the amended declaration is assigned as error. It is insisted that it, in effect, alleges a new cause of action. The amended counts simply describe with more particularity the manner in which the injury occurred than was done in the original declaration. It was clearly no departure from the original declaration, either in respect to the averments of defendant's duty in the premises, or the acts of negligence complained of. The amendment is beneficial rather than prejudicial to the defendant, because it more certainly informs it of the particular acts of negligence which plaintiff expected to prove. Increasing the damages certainly constituted no new cause of action. Courts are very liberal in allowing a plaintiff to amend so long as there is no departure from the original cause of action. There is no departure in this case. Increasing the amount of damages is not a departure. *Bentley* v. *Insurance Co.*, 40 W. Va. 729; *Clark* v. *Ohio River R. R. Co.*, 39 W. Va. 732; and Hogg's Pleading, Sec. 190, note 5.

Objection was made to the testimony of K. K. McCormick and W. H. Howard who were examined as experts concerning the constituent elements of nitro-glycerin, at what temperature it froze and what would be regarded as a safe method of thawing it. The former was a school teacher and had studied chemistry in a laboratory at college, and the latter was a civil engineer and had superintended construction work where dynamite and nitro-glycerin were used in blasting. But neither had had any actual experience in handling it. We are not called upon to determine whether these witnesses were shown to possess sufficient knowledge to entitle them to give their opinions as experts, for the reason that it is clear

their testimony has not prejudiced defendant. Its own witnesses prove that the method which plaintiff says was employed to thaw the nitro-glycerin, and which the jury evidently found to be the fact, was dangerous. Mr. Norris himself was examined concerning the danger of turning steam into cold water with cans of nitro-glycerin in it, and says it was considered dangerous and that he never did it on any occasion. Mr. Albert Oppenheim, manager, secretary and treasurer of the defendant company, testified in its behalf. In the course of his testimony he names the constituent elements of nitro-glycerin, explains the method employed by his company in its manufacture, and said the men who were employed to handle it were carefully instructed as to how it should be handled, that, when a man is sent out to shoot a well, he is not allowed to have another man to assist him, that a second man could be of no assistance. He also stated that the rule to be observed in thawing nitro-glycerin was, to immerse it in water, first heated to a temperature of 120° to 160°. John R. Kuhn and J. E. Hines, both witnesses for defendant and experienced oil well shooters, testified to the same effect. The same vital fact, testified to by plaintiff's witnesses whose competency is questioned, being proven by defendant's expert witnesses, it follows that it could not be prejudiced by the concurring testimony of non-expert witnesses.

Objection was made to the introduction of four or five photographs of the engine and grounds, taken after the explosion had occurred, for the alleged reason they were not properly identified, or proven to be exact pictures of the place. Although Henry Vineyard who took the photographs is not as positive as he might have been, that they were the same pictures which he took, because he says they had been out of his hands for a while, yet he says they appear to be the same. He was asked, ''What can you say about it? Is it correct or not? A. It looks like it is correct. I don't see anything wrong with it. There is a little scratched place here. Q. Does that represent the ground and scene there just as it existed? Yes, sir.'' In another place he says, ''I have no doubt that this is one of my pictures, although it has been

out of my hands." He identifies, in the picture, a part of the water tank that was left standing after the explosion. Ross Belt, another witness for plaintiff, identified an oil barrel lying on the ground, shown in one of the pictures, which was not destroyed by the explosion, and which he says he saw just shortly before the explosion. He also pointed out, on one of them, the bottom of the barrel that had been used in thawing the nitro-glycerin, and which, he says, had the staves broken off by the explosion, to within six or eight inches of the bottom. We think this testimony, viewed in connection with the appearances of the photographs, sufficiently identifies them, and shows that they are true photographs of the place and its surroundings and that they were taken after the explosion. They were offered simply to show the violence of the explosion and the effect it produced upon the engine house and water tank nearby. They furnished no evidence upon the vital question in the case, but were admissible as evidence tending to prove the great force of the explosion.

Ross Belt was at the engine house just before the explosion and was about one hundred and fifty yards away at the instant it occurred. He was permitted to testify, over defendant's objection, that the greatest injury to McClain's body was about his head, that the front part of his head was blown off. This was a proper circumstance to go to the jury in support of plaintiff's theory and in refutation of defendant's. If the explosion had taken place on the ground the probability is the greatest injury would have been done to the lower part of his body.

The court gave six instructions at the request of plaintiff to the giving of each of which defendant objected. We have carefully considered them and find they state the law applicable to the case. Plaintiff's No. 3, of which serious complaint is made, reads as follows:

"The jury are further instructed that a person in the possession or control of nitro-glycerin designed to be used by him is bound to the highest degree of care to take every reasonable precaution to prevent explosion."

The degree of care required in handling a dangerous

79 W. Va.

agency, in order to prevent injury to third persons, must be commensurate with the apparent danger, because no less degree of care would be reasonable. Hence, in handling so dangerous an explosive as nitro-glycerin, a very high degree of care, as compared with the caution required in performing a less dangerous work, is only reasonable care. The terms, "highest degree of care," as used in the instruction, are qualified by the phrase that follows them, "to take every reasonable precaution to prevent explosion." Handling nitroglycerin is an extremely hazardous business, and requires skill and a very high degree of care. *Morrison* v. *Appalachian Power Co.*, 75 W. Va. 608, 84 S. E. 506; *Mattson* v. *Minnesota &c. R. R. Co.*, 95 Minn. 477, 70 L. R. A. 503; *Sowers* v. *McManus*, 214 Pa. 244; *Pittsburg &c. R. R. Co.* v. *Shields*, 47 Ohio St. 387, 24 N. E. 658; *Rush* v. *Spokane Falls &c. Ry. Co.*, 23 Wash. 501, 63 Pac. 500. In defining what is reasonable care in handling nitro-glycerin and dynamite, some of the foregoing authorities use the terms, "utmost degree of care," and others the "highest degree of care."

The defendant asked for sixteen instructions, all of which were given except three, designated as "A", Nos. 7 and 15. "A" was a peremptory instruction to find for the defendant and, of course, was properly refused. No. 7 was to the effect that, as it was proven the Ohio Fuel Oil Company had complied with the act of the legislature, known as the Workmen's Compensation Act, and plaintiff, its employe, had applied for and received compensation, on account of his injury, from the fund provided by that act, he is thereby estopped to recover in this action. We have recently decided the question presented by this instruction, adversely to defendant's contention, in *Mercer* v. *Ott, Com'r.*, 78 W. Va. 629, and, inasmuch as the question here presented is identical with the one there decided, it is only necessary to refer to that case.

Plaintiff's injury was not due to the negligence of his employer, but, according to the finding of the jury, to the negligence of defendant, an independent contractor to do a particular work. The compensation act does not deny right of action to a workman for injury received in the course of his employment, unless the negligence is that of the master, or

such for which the master was liable at the common law. If the employe is injured in the course of his employment he is entitled to compensation out of the fund, whether his injury was occasioned by the negligence of the master or not; if occasioned by the negligence of a third person his right to compensation out of the fund is not thereby affected, nor is his right of action against such third person causing the injury impaired. The provision of the act is somewhat in the nature of life and accident insurance. That a person may be protected by accident insurance, and at the same time have right of action against the person whose negligence produced the accident resulting in his injury, is well settled.

No. 15 would have told the jury that, if they found from the evidence the defendant company had prescribed certain rules to be observed by its agents in handling nitro-glycerin, and Norris had disobeyed its rules and instructions and thereby caused the explosion, it was not liable for such negligent act of its agent. This is not the law. Norris was defendant's agent to perform a certain work and was acting within the scope of his authority in performing the act which caused plaintiff's injury. Hence, his disobedience, if he did fail to observe the rules and instructions prescribed by defendant to govern his conduct in performing that particular work, would not relieve defendant from liability. Those rules were defendant's private instructions to its agent, and there is no evidence that plaintiff knew what they were, and he could not be said to have assumed the risk of their violation. *Wilton* v. *Middlesex R. R. Co.*, 107 Mass. 108, 9 Am. Rep. 11; *Lake Shore & Mich. South. R. R. Co.* v. *Brown*, 123 Ill. 162.

"A master is liable in a civil action for injuries occasioned by the unlawful act of his servants, done under a mistake of facts or a mistake of judgment upon the facts, in the course of the business of the master, although the servant in doing the act departed from the instructions of the master." *Higgins* v. *Turnpike and Railroad Co.*, 40 N. Y. 23, 7 Am. Rep. 293.

The court's refusal to set aside the verdict as being excessive, and on the ground of after-discovered evidence, is also assigned as error. Plaintiff was severely injured. The

doctor who attended him says there were many injuries on his body, some of them severe. The scalp on one side was loosened from the skull, and his hearing in one ear was entirely destroyed. He was rendered unconscious and remained in that condition for a long time, was taken to the hospital at Spencer and treated there for about five weeks before he was able to get out. In view of his injuries, we can not say the jury's assessment is exorbitant.

The after-discovered evidence relates to the presence of a hole in the ground about the point where defendant contends the explosion took place. The affidavit of Bert Bergwyn states that, on the 30th of March a short time after the explosion took place, while working around the place, he stepped in a hole filled with mud and water, and that this point is between the place where the water tank stood and the engine house. This evidence would tend to locate the hole about where witness Norris says he placed the cans of nitro-glycerin on the ground. Taken in connection with the fact proven, that the bottom portion of the barrel was seen by witness Belt after the explosion, showing it to have been impossible for the explosion to take place in the barrel and produce the hole in the ground, it is insisted that the evidence is very material. In the first place, it is not proven the hole was produced by the explosion. Bergwyn does not say it was not there before, he only says he did not see it before. In the next place, assuming it was not there before the explosion, it is a circumstance in nowise conclusive, and would tend only to corroborate witness Norris and contradict plaintiff who swears positively he saw the cans in the barrel only a minute or two before the explosion. It is only cumulative in character and can not be said to be of sufficient probative value to be likely to produce a different result on another trial. Moreover, affiant was examined as a witness for defendant, and, even assuming the affidavits of Mr. Oppenheim, Mr. Goe, and of the members of the firm of Pendleton, Mathews & Bell, counsel for defendant, are sufficient to show due diligence in procuring evidence, material to the defense, still this after-discovered evidence is not of sufficient importance to warrant setting aside the verdict. A verdict should not be set aside

to let in after-discovered evidence which is merely corroborative or contradictory of some witness, and which is not of such character as the court can see ought to produce a different result on a new trial. *Sisler* v. *Shaffer*, 43 W. Va. 769; and *Stewart* v. *Doak Bros.*, 58 W. Va. 172.

"A new trial will not be granted on the ground of after-discovered evidence, when it does not appear that such evidence could not have been discovered by due diligence before verdict, nor when it is merely cumulative, or tends to contradict or discredit a witness on the former trial, and is not decisive in its character." *Carder* v. *Bank*, 34 W. Va. 38.

Other assignments are governed by the points herein decided. The judgment is affirmed.

*Affirmed.*