María Dragoni y Dragoni, Plaintiff and Appellee, v. United States Fire Insurance Co., Defendant and Appellant; María Dragoni y Dragoni, Plaintiff and Appellant, v. United States Fire Insurance Co., Defendant and Appellee; María Dragoni y Dragoni, Plaintiff and Appellee, v. London Assurance Corporation, Defendant and Appellant; María Dragoni y Dragoni, Plaintiff and Appellant, v. London Assurance Corporation, Defendant and Appellee.

Nos. 3685, 3686, 3687 and 3688. Argued May 27, 1926.—Decided March 24, 1927.

*J. H. Brown* and *Clemente Ruiz Nazario* for the appellant in cases 3685 and 3687. *Jacinto Texidor* for the appellee. *Jacinto Texidor* for the appellant in cases 3686 and 3688. *J. H. Brown* and *Clemente Ruiz Nazario* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

María Dragoni filed four suits against insurance com-

panies to recover losses alleged to have been caused to her by a fire on the night of the 25th of January, 1924. Two of the suits were against the United States Fire Insurance Company and two of them were against the London Assurance Corporation. These two companies were alleged to be jointly responsible for loss by fire on two different risks each, one the house and furniture of the complainant and the other some coffee that was supposed to be stored in the basement of the same house, a two-story building made of wood with a zinc roof.

The suits were brought in the District Court of Ponce and by stipulation of the parties all four actions were tried together, in a single hearing. The court rendered judgment for the complainant on the house and contents and dismissed the complaints with respect to the claim for the coffee which the complainant alleged was destroyed by the fire. Both parties have appealed and have filed a stipulation to present the evidence all in a single record.

The complainant presented testimony tending to show that on the night before the fire five or six hundred bags of coffee were stored in the said house. On the other hand, defendants presented very strong evidence tending to show that no coffee at all had been burned in the said fire. A number of witnesses, and some of them offered as experts, testified that not a trace of coffee was found on the burnt premises and that the remnants were nothing but wood ashes; that where coffee was burned there would invariably be some traces of the same. We have little question that if the court had a right to consider all the evidence submitted by the defendants, its findings with respect to the absence of any coffee stored were completely justified. The complainant, however, objected to a great part of this evidence and has duly assigned exceptions which we shall consider. For convenience of treatment we shall refer to the parties as they were designated in the lower court.

The first assignment of error relates to five photographs which were offered by the defendants, and admitted by the court. The record shows that these photographs were taken by or under the direction of William D. López, who was a sub-agent of the defendant companies and who went to the scene of the fire within twenty-four hours after it had taken place. The complainant had presented evidence tending to show that on the morning after the fire there were heaps of burning coffee and the object of these photographs was to demonstrate that on said morning there were no such heaps of burning coffee, and indeed no heaps at all. The complainant objected to this admission because there was no proof of when they were taken or that the complainant had had any share in the taking of the same; that the evidence was irrelevant and could not be a representation of the effects destroyed because the evidence was self-serving and hearsay. In *Vidal* v. *Porto Rico Ry., Light & Power Co.*, 32 P.R.R. 716, we said: ''Objection was made to the admission of these photographs as not identified by the photographer; but, like signatures and other matters, persons showing a competent knowledge may identify.'' The idea, more or less, was that photographs once properly identified were, like other evidence, admissible, subject to their relevancy to the facts in issue. The relevancy of the photographs offered here was very plain. They tended to destroy the statement of complainant's witness that there were burning heaps of coffee on the morning after the fire. A photograph taken to show a condition at a certain time is the best demonstrative evidence that could be presented, always supposing that the photographer is accurate in taking the photograph. Photographs offered in evidence are subject to objections that belong to the photographic art, namely, that the focus may be bad or that the light and shade or other matters are not duly represented, but, barring this and other possible exceptions, photographs of a particular scene at a particular time have a certain amount

of weight which the court has to measure. *Diller* v. *Northern Cal. Power Co.,* 162 Cal. 538; *Merrill* v. *Marietta Torpedo Co.,* 79 W. Va. 669, 92 S. E. 112, L.R.A. 1917F, 1043, 1048; 10 R.C.L. 992; 10 R.C.L. 1153, 1156.

Photographs are not self-serving evidence, nor are they hearsay. The absence of the complainant can make no difference any more than the statements of an eye-witness would require the presence of the complainant; each is primary testimony. In point of fact, the photographs were taken with several agents and representatives of the complainant on the scene, who made no protest at their being taken. Naturally, the opposing party can not cross-examine photographs showing the physical condition of any building, just as he can not where the jury take a view or where witnesses speak of the condition of a building, but the opposing party may always cross-examine the witness as to his ability or dexterity in taking the photographs, and of course may show that the facts are otherwise and may argue to the court that the photographs under the conditions are not a true representation of the physical facts.

The second assignment was that the court erred in allowing the defendants to ask the witness J. Otilio Vega about other fires in which coffee was destroyed. It turned out that the defendants were attempting to show by the witness from his experience of other fires that when coffee was burned it would be practically impossible for all traces to disappear within the time when this particular fire took place. The objections that the complainant made were two. First, that the witness was not properly qualified as an expert and did not have sufficient chemical knowledge to be able to state the results of a fire, nor the amount of heat that it would take to consume coffee; and second, that there was no demonstration that the circumstances of other fires were the same or similar to the one before the court.

Similar objections were made by the complainant under

the third and sixth assignments to the admission of the statements of Pedro Schuck and Pedro Vivas Valdivieso, respectively. These two witnesses, like the witness Vega, *supra*, while having no special training in chemistry, sufficiently satisfied the court and satisfy us that they were in general qualified to express an opinion on the effects of a fire on coffee or coffee grains. Each of the witnesses had had an experience and made observations in a considerable number of fires wherein coffee was burned. It was not necessary that any of them should show a chemical training, because any one may become expert in many a field without a college or a university training, or even a special study of the principles of chemistry. The question of the effects of a fire on coffee and coffee beans may well come within the experience of almost anybody who has seen a number of fires where coffee was burned. One or more of the witnesses, besides, had had experience in roasting coffee, having been engaged in the business of raising coffee. It was unnecessary to be able to speak of the amount of heat it would take to destroy all signs of coffee, a state of facts which none of the witnesses had ever seen.

Under the fourth assignment of error the complainant objects to a certain hypothetical question asked of the witness Pedro Schuck. It was a long one and attempted to sum up certain previous facts relating to the burning of the coffee and whether it would be possible for all of the coffee to have burned under the conditions set forth. It was presupposed that the fire had lasted only two hours. The specific objection of the complainant was that the evidence did not show that the fire had lasted only two hours. The general tendency of the evidence of the complainant was that the fire had lasted a very short time, but in the further examination of the witness he made the statement that even if the fire had lasted ten hours, or perhaps even longer, traces of coffee would be

found. So that, even supposing there had been a slight error, there was no prejudice.

Objection was made under the fifth assignment of error to the admission of certain photographs taken some eight days after the fire had occurred. Evidence of the complainant was apparently to the effect that the fire was still smoldering at that date, and therefore the objection that this period was too late could not really avail the complainant. The situation of the things burned had not been changed in the eight days and similarly as to the admission of the other photographs, the matter before the court was the weight of the testimony.

There was also an assignment of error, No. 7, in admitting the testimony of Angel M. Pesquera as an expert. The specific objection was that he had no knowledge of the degree of heat necessary entirely to consume coffee. The answer to this contention is that the witness was duly qualified as a chemist and it was not necessary for any of the witnesses to have an exact knowledge of the degree of heat required.

We agree with the defendants, as indicated in our introductory statement, that the evidence was strong and convincing that no trace of the coffee was found, this being strong circumstantial evidence to justify the judgment of the court that no coffee was burned, and this disposes of the eighth, ninth and tenth assignments of error.

We come now to consider the appeal of the defendants and we shall first consider assignment of error numbered four, which set up that the fire was not casual.

In the first place there is the salient fact, as found by the court below and affirmed by us, that the complainant or her agents attempted to recover the value of coffee which was never in fact burned. This attempt is one of the strongest imaginable badges of fraud and points by itself to an incendiary origin of the fire. The principal doubts we have had in favor of the complainant are that the court below,

very mistakenly, in its findings paid no heed to the issue of incendiarism; and that there was no strong physical evidence of a fire being prepared. In *J. Llamas & Co.* v. *Great American Insurance Corp.*, 33 P.R.R. 781, cited by the defendants, the court found for the insurance company and the evidence of preparation by laying combustible materials were strong. On the other hand, in this case the testimony showed that the fire started rapidly and inexplicably; that Lorenzo Dragoni, the agent and *mayordomo* of the complainant, was alone on the premises, was up, at least partially dressed, and apparently made no serious attempt to arrest the fire or even to salvage any of the furniture. Some of this, and especially a telephone, was subsequently, according to one witness, seen elsewhere. Another strong circumstance against the complainant was that at the time of the fire the family of Lorenzo Dragoni, who usually lived with him, was away and so was a school teacher who usually lived on the premises. The evidence does not satisfy us, as claimed by the defendants, that the house and contents were greatly overvalued. The finding of the court was against this. There are the additional facts that the complainant claimed that all the coffee was burned and a subsequent investigation showed that some of it was stored elsewhere on the premises. Then there was evidence coming from a witness otherwise believed by the court that some book or books of the complainant were altered after the fire. Given the false statements of the agents of the complainant on the stand and the fraudulent claim for coffee that was never burned, the other circumstances of the case are so strong as to lead us to conclude that the fire was not casual, but was started by an agent or agents of the complainant.

Before discussing the other assignments of error of the defendants it is well further to state the facts. In this branch of the case it appears that the complainant sued different companies to recover $4,000 for the house and $500

for the furniture. In the said house the coffee was stored. The complainant alleged, and the court agreed with her, that the house was worth $4,000. The complainant alleged that the furniture was worth $1,000. The defense set up that the furniture was not worth $500, did not belong to the complainant, and that a great part of it was salvaged. The court found in favor of the complainant to the extent of the $500 covered by the policies.

The first assignment, in effect, assails the action of the court in not holding that the complainant had no right to recover because she did not present her proof of loss within fifteen days after the fire occurred. The condition of the policy was as follows:

"Article 10.—On the happening of any loss or damage to the property hereby insured the Insured shall forthwith give written notice thereof to the Company, and shall within 15 days after the loss or damage, or such further time as the Company may in writing allow in that behalf, deliver to the Company—

"(a) A claim in writing for the loss and damage containing as particular an account as may be reasonably practicable of all the several articles or items of property damaged or destroyed, with the amount of the loss, having regard to their value at the time of the loss or damage, not including profit of any kind.

"(b) Particulars of all other Insurances on the said articles, if any.

"The Insured shall also at all times at his own expense produce, procure and give to the Company all such further particulars, plans, specifications, books, vouchers, invoices, duplicates or copies thereof, documents, proofs and information with respect to the claim and the origin and cause of the fire and the circumstances under which the loss or damage occurred, and any matter touching the liability or the amount of the liability of the Company as may be reasonably required by or on behalf of the Company together with a declaration on oath or in other legal form of the truth of the claim and of any matters connected therewith.

"No claim under this Policy shall be payable unless the terms of this condition have been complied with by the Insured."

As a general rule we have no question that such a condi-

tion in a policy is binding on the assured and in the absence of waiver or other similar condition will prevent the assured from recovering. *Quiñones* v. *L'Union*, 34 P.R.R. 388, and cases; *J. Casablanca, Ltd., et al.* v. *Palatine Ins. Co.*, 32 P.R.R. 622; *Missouri Pacific Railway Co.* v. *Western Union Assurance Co.*, 129 Fed. 610; *White* v. *Home Mutual Insurance Co.*, 128 Cal. 131; Joyce on Insurance, section 3280.

Section 175 of the Insurance Law of 1921 (Laws of 1921, p. 648) is as follows:

"Section 175.—Any clause in an insurance contract depriving the insured of his right to claim in the courts of justice, at any time after the occurrence of the accident against which the insurance was made, the amount of any loss suffered and which has been the object of such insurance, shall be illegal. The court shall determine not only the liability of the company but also the amount of the loss."

A provision like this, as has been held, does not prevent an insurance company from insisting that a proof of loss shall be presented. *Hicks* v. *British American Assurance Co.*, 162 N. Y. 284, 48 L.R.A. 424; *McNully* v. *Phoenix Insurance Co.*, 137 N. Y. 389; *North British & M. Insurance Co.* v. *Lucky Strike Oil Co.*, 173 Pac. 845, 22 L.R.A. 398; *Miguel Ríos Rivera* v. *The Niagara Insurance Co.*, 33 P.R.R. 773. Article 10 is not a limitation on the remedy but on the right of action.

The foregoing propositions, we take it, are not seriously denied by the complainant. The idea is that the defendant companies by their actions waived any necessity for furnishing them with proofs of loss. The complainant did not present her proofs of loss in time, but sent them to the adjuster several months later than the fifteen days required by the policy.

There was nothing difficult about the supposed losses in this case. They were all total. It is true that two of the agents of the companies went almost immediately to the burned premises, made all sorts of investigations, asked all sorts of questions and even took away a book or books of

the complainant, but as shown by complainant's own testimony these agents made it clear to the complainant that they had no authority, or would take no authority, to settle the claim, but that that function belonged to the adjuster. The two agents referred to, it appears, went to the premises at the instance of a friend or agent of the complainant. The agents went in company with a detective. It can not be that the mere presence and investigation by agents of the companies constitute a waiver and if they must abstain under penalty of a waiver from making a timely investigation, then incendiarism would be made easier and simpler. In point of fact the policy provides for the consent and cooperation of the assured in furnishing data to the agents of the companies.

In the brief counsel for the complainant draws attention to what he characterizes as the curious personality of the so-called adjuster. Counsel draws a picture of this officer as being a hypocritical, two-faced person; that he appears on the scene of loss and investigates various things without the intervention of the assured, requires all sorts of documentation and books of the said assured, and then when the supposed moment of settlement or compromise arrives says he can not proceed further until he has consulted with his company. Counsel would have the court believe, apparently, that the idea of the adjuster is to trick the insured in order to escape the payment of loss.

The adjuster of a fire insurance company has been a well recognized person for over a half century of experience in fire insurance matters. The adjuster frequently has a complete legal authority to settle a claim, but not always. Like other agents, even when he has a complete authority to settle, his instructions or his experience may counsel a submission to his principal before he makes the settlement. In this he is no different from an attorney who makes a settlement in court, or a sales agent, or numerous other agents who

have legal authority but deem it inexpedient to make certain settlements without having the advice or consent of their principals.

So far as the adjuster in this case is concerned, we find no act of waiver. When he caused the assured or her agent to sign a waiver of rights, such a document is not at all an unusual one, and in the case at bar was actually signed quite a long period after the time for presenting proofs of loss had expired. Whether he performed any acts previous to the signing of the said document, which alone or in connection with the acts of other agents would constitute a waiver, is a different matter. The question for us is not one of fraud on the part of the companies, as the complainant suggests, but a question of fact, namely, whether the total acts of the companies in this case, or their agents, amounted to a waiver of the necessity fixed by the policy of submitting a proof of loss within fifteen days from the time when the fire occurred.

The defendant companies set up that where the assured relies on the waiver by the companies of the necessity for presenting proofs of loss, the assured must allege such waiver in filing suit on their policies. Perhaps, if the court below had decided the case in favor of the defendant companies on this ground and the complainant had not offered to amend, we probably should have sustained the judgment of the court below. Where, as here, the battle in the lower court apparently raged over the question of waiver by the acts of the various agents of the companies, we should be disposed to consider the complaint amended to cover the alleged waiver on the part of the defendants of the complainant's presenting a proof of loss, or as being an inessential variance. *People* v. *Valdés,* 31 P.R.R. 213.

The burden of proof is on the complainant to show that the companies had waived any condition of the policy, and this we find they failed to do, either with respect to the general agents, or with respect to the acts of the adjuster

taken singly, or with respect to the acts of all of them taken as a whole. The fact that the adjuster, within a few days after the fire, asked numerous questions and took books from the assured does not constitute a waiver.

The companies alleged other errors, as, for example, that the house and its contents were never worth the amount for which they were insured. But, however, as we have come to the conclusion that the fire was of incendiary origin, and that the companies did not waive the condition of the policy requiring that the proof of loss should be presented within fifteen days, and it was not so presented, the judgment of the District Court of Ponce should be reversed.

Therefore, judgments will be drawn affirming the judgment of the District Court of Ponce in so far as it refused to recognize the claims for coffee burned, and reversed in so far as it recognized the claim of the complainant for the house and its contents.

Mr. Chief Justice Del Toro concurred.

CONCURRING OPINION OF MR. CHIEF JUSTICE DEL TORO

I agree with the judgments rendered because the incendiary origin of the fire was traced to the insured. Therefore, I do not think it necessary to enter into a consideration of the acts of the adjuster and I prefer to refrain from showing my conformity with the majority opinion in this particular, for I have doubts as to the principles established thereby in the light of the circumstances surrounding the case.