# CHARLESTON

MORRISON v. APPALACHIAN POWER Co.

Submitted February 3, 1915.   Decided February 16, 1915.

1. ELECTRICITY—*Personal Injuries—Ownership of Wires—Sufficiency of Evidence.*

   Ownership of an electric light and power wire, supplying current to a pumping station situate outside of the corporate limits of a town and used in supplying water to the inhabitants thereof, is reasonably to be inferred from proof of ownership of the power plant and electric lighting system within the town, and from proof that all the wires are supplied with electricity from the same power plant.   (p. 609).

2. SAME—*Injuries to Traveler—Liability—Highways—Ownership of Wires.*

   An electric company is liable to a traveler on the highway for an injury received by coming in contact with a broken telephone wire, not owned or controlled by it, but which it has suffered to become charged with a dangerous current of electricity from its own wire by falling across it in the highway, and so remaining for an unreasonable length of time.   (p. 612).

3. SAME—*Negligence—Care Required—"Reasonable Care."*

   Reasonable care and negligence are relative terms, and the degree of care required in a given case must be commensurate with the dangers to be avoided.   In handling so dangerous an agency as electricity a high degree of care is not unreasonable.   (p. 612).

Error to Circuit Court, Mercer County.

Action by William Morrison against the Appalachian Power Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Bernard McClaugherty* and *French & Easley*, for plaintiff in error.

*Greever & Gillespie* and *Sanders & Crockett,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff was driving a team of horses along a narrow public

road, walking beside his team, and, seeing a broken telephone wire lying across the ditch and extending into the road and fearing it would become entangled in his wagon wheels, stooped to pick it up and throw it out of the road, and was severely shocked and burned. It happened to be highly charged with electricity. He sued and recovered a judgment for $3,000 against defendant, and it brings error.

The principal error relied on is the refusal of the court to set aside the verdict, on the ground that it is not supported by the evidence. The telephone wire, harmless in itself, was charged by being in contact with an electric light and power wire, strung beneath it on the same poles, and across which it had fallen. Two telephone wires, and a signal wire connecting with the town's water tank to indicate the quantity of water therein, ran to the pump station, a mile and a half from the town of Pocahontas. These wires are admitted to be the property of the Pocahontas Light & Water Company, a subsidiary of the Pocahontas Consolidated Collieries Company. The electric light wire extended from the power plant in the town of Pocahontas to the pump station, furnishing light and power thereto, and was formerly owned and controlled by the Pocahontas Light & Water Company. But about a year previous to the accident, defendant purchased from said last named company its electric power plant and wires in the town of Pocahontas. Plaintiff contends that it also purchased and took control of the electric light wire running to the pump station, and defendant contends that it is not proven by the evidence that it did. Defendant's liability depends upon the proper determination of that controverted question of fact. If it did not own and control the electric light and power wire of course it owed no duty to keep it in a safe condition, and is not liable, It is not seriously contended that negligence on the part of the owner of the wire is not shown, nor that the jury were not justified, by the evidence, in exonerating plaintiff from contributory negligence; neither is it claimed that the verdict is excessive. The chief contention of defendant's counsel is, that there is not sufficient evidence to prove defendant's ownership and control of the wire. But after carefully reading and considering the record in connection with the carefully prepared briefs and oral

argument of counsel on both sides of the case, we are satisfied that there was sufficient evidence on the question of ownership to justify the jury in answering affirmatively the special interrogatory, as to whether or not defendant owned it at the time plaintiff was injured. Defendant's contract of purchase from the Pocahontas Light & Water Company was in writing, and was not in evidence. Counsel for defendant insists that its purchase was confined to the wires strung within the corporate limits of the town of Pocahontas, and did not include the wire running to the pump station. There is no positive testimony by any of the defendant's witnesses, that it did not own and control the wire. It relies upon the weakness of plaintiff's evidence to prove that it did own it. Suppose the written contract of purchase had been produced and that it appeared not to mention specially the wire running to the pump station as a part of the plant and lighting system included in the contract, would not the reasonable presumption be, if it was not excepted, that it was included within the general terms of description of the property sold? We are inclined to think so. It is hardly reasonable that defendant would have purchased the power plant and all electric light wires fed thereby, except the one extending out of town to the pump station, without some special reason therefor and some agreement respecting the supply of electricity intended to be carrier by it. It is the general custom with electric light companies to erect and maintain the wires by which they supply light to their customers, and in the present case defendant continued to supply current from the power plant to the pump station just as it had been supplied before the purchase. There is no evidence that the pump station was supplied with electric current under a contract or arrangement differing from that prevailing with defendant's other customers. It is highly probable that some special agreement would have been made, if the water company was to be supplied with electricity to be delivered to it at the generating plant and then to be carried on its own wire to the place where needed. While direct evidence of a material fact is always desirable, it is not always possible to obtain it, and in such cases it is proper to resort to natural and reasonable presumptions based on the general observation and ex-

periences of men as the best evidence. Underhill on Evidence, Sec. 225. The application of that doctrine to the present case is certainly in the interest of justice, because it was extremely difficult for plaintiff to prove defendant's ownership by direct evidence, and very easy for defendant to prove that it did not own it, if that was the fact. The injury to plaintiff occurred on May 1, 1912. Defendant purchased the electric light plant in April, 1911. Mr. Walters, a witness for plaintiff, says the line ran through his place; that he was cutting some timber along the electric line, and made application to Kell Maxey, an employee of the defendant, in April, 1912, to take down the wires so he could fell the trees without breaking them, and the wires, including the electric light wire, were taken down according to his request. Mr. Bunn, superintendent of construction for the defendant company, was examined as a witness on behalf of plaintiff, and he said he did not think his company operated the line. But he admits that electricity was furnished to the line from the power plant that furnished light to citizens in the town of Pocahontas. He was asked if the defendant was not operating the line at the time of the accident, and answered: "Well, the line was in service. Q. In whose service? A. Well it was in service supplying the electric power down to the pump station; but I don't think the Appalachian Power Company had charge of it or control over it." It is also proven, that, sometime after the accident, men employed by the Appalachian Power Company took down the electric wire in question and erected another line connecting with defendant's main line at a point near to the pump station, over which electricity was delivered thereto. In the absence of any explanation of why this was done, it is fair to presume that it was because defendant owned and controlled the line, and it was more convenient and less expensive to deliver by the shorter line. Presumably it had such ownership and control from the time it purchased the power plant, there being no evidence that it had any control over the line, or right to remove it, other than it acquired by its original purchase, nor is there any evidence that it acted for the Pocahontas Light & Water Company in removing the line and substituting therefor a new one. The evidence is sufficient to prove *prima facie* ownership and control of the wire by the

defendant, and cast upon it the burden of disproving it. The court, therefore, properly refused to set aside the verdict, on the ground that it was not supported by the evidence.

The refusal of the court to give defendant's instructions Nos. 1, 5, 7, 8, 10, and 11 is complained of. No. 1 is a peremptory instruction to find for defendant, and of course was properly refused in view of what we have already said. The court gave its instructions Nos. 2, 3, 4, 6, 9, and 12, which fairly presented its theory of defense. We have carefully read and considered all the instructions which were refused, and do not think any error was committed in refusing them. As we have concluded to affirm the judgment, it will serve no useful purpose to discuss, seriatim, the rejected instructions. Some of them were refused because they were covered by others, given at the request of defendant, and others were properly refused for want of evidence to support them.

Having the ownership and control of such a dangerous agency as electric transmission wires, defendant was bound to exercise a degree of care commensurate with the danger likely to be produced by its negligence. It was bound to a high degree of care to see that the current was not permitted to escape from the wire in such way, and by such means, as to injure persons in lawful use of the public highway. *Thomas* v. *Electric Co.,* 54 W. Va. 395; *Thornburg* v. *City & Elm Grove R. R. Co.,* 65 W. Va. 379. Reasonable care and negligence are relative terms and depend upon the circumstances and exigencies of the particular case. The greater the danger to others from failure to exercise care, the greater is the degree of care required. *Van Winkle* v. *American Steam Boiler Co.,* 52 N. J. L. 240; *Ambright* v. *Zion,* 108 Iowa 338; *Schutte et al.* v. *United Electric Co.,* 68 N. J. L. 435.

Although the defendant did not own or control the broken telephone wire, an agency directly contributing to plaintiff's injury, still, having control of the electric wire that transmitted the dangerous current of electricity that caused the broken telephone wire, otherwise harmless, to become very dangerous, it was liable, if it negligently suffered the danger to continue for an unreasonable time. *Western Union Tel. Co.* v. *Nelson,* 82 Md. 293; and *New York & N. J. Tel. Co.* v. *Bennett,* 62 N. J. L. 742, 42 Atl. 759. There is evidence tend-

ing to prove that the broken telephone wire had been seen in the road, in the same condition, for a number of days prior to the accident. The jury could, therefore, properly infer that defendant was negligent in failing to discover and remove the danger. The judgment is affirmed.

*Affirmed.*