# CHARLESTON.

S. H. ROBERTSON, EXR. etc. *v.* COAL & COKE RAILWAY CO.

Submitted September 22, 1920.   Decided October 5, 1920.

1. RAILROADS—*Pedestrian on Track Commonly Used as Pathway Held Mere Licensee.*

   One having the ordinary power to discern and appreciate danger, who, in common with others, uses, with the implied knowledge of the operator, part of a railroad track, elsewhere than at a public crossing, as a pathway for his own convenience, is at most a mere licensee, and as such the company owes him no other or higher duty than it owes a trespasser. (p. 110).

2. SAME—*Injuries to Pedestrian Held Not Actionable, Unless He Was Discovered.*

   An adult, not an employee of the company, in the full possession of the faculties necessary to enable him to foresee and perceive the dangers attending his presence upon railroad property, injured while using a railroad track as a footpath for his own convenience, elsewhere than at a public crossing, cannot recover damages therefor from the company, unless it be shown that after he was discovered upon the track by the employees of the company they did not use reasonable care to avoid injuring him.. (p. 110).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Kanawha County.

Action by S. H. Robertson, executor of John R. Grubb, de-

ceased, against the Coal & Coke Railway Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Price, Smith, Spilman & Clay,* for plaintiff in error.

*M. M. Robertson* and *W. E. R. Byrne,* for defendant in error.

LYNCH, JUDGE:

As executor of John R. Grubb, plaintiff brought this action to recover damages for injuries inflicted by defendant upon the testator from which his death ensued a few hours later. A verdict and judgment for $2,700 resulted from a trial of the action, and defendant prosecutes this writ to reverse it.

Defendant owns and operates a railroad from Elkins southward to Charleston, the greater part of the distance being along Elk River. Clendenin, a town of approximately 1,500 people, is an intermediate station. A freight train composed of an engine, tender and twenty-seven cars bound from Charleston to Elkins entered upon a side track at Clendenin to permit a Charleston-bound passenger train to use the main track at that point in its passage down Elk River, and while backing out of the siding onto the main track to resume the journey northward after the passenger train had passed, the rear car of the freight train struck Grubb, knocking him down, and that and other cars of the train ran over his body, severed both legs below the knees and otherwise seriously injured him, thereby causing his death.

Grubb, then aged about 60 years, was in good physical and mental condition for a man of his age, his only physical defect being slight dullness of hearing. When injured, he was walking southward between the rails of the main track of defendant's railroad below Clendenin in the same direction as the backward moving train. What the object of his journey was no evidence shows. The high school building of which he was at that time the janitor is located above the Clendenin depot, but the location of the small farm owned or controlled by him the evidence does not disclose. He lived in Clendenin at the home of his daughter's husband.

Occupants of from 40 to 65 dwelling houses in the lower

part of Clendenin, and people living at Reamer, a short distance below the town, were in the habit of using defendant's railroad, as deceased was using it when injured, in going to and returning from Clendenin, so frequently, as plaintiff contends and as the evidence tends strongly to show, that defendant must have had notice or knowledge of such user. Among these were children of different ages going to and returning home from school when in session at Clendenin. The houses so occupied and others devoted to business and other purposes are on each side of and in close proximity to the railroad track below the depot, though for the most part they are between the railroad and river. There was then available for use by pedestrians a public road along the same side of the river and a pathway along the outer ends of the crossties of the track; one entirely safe, the other much less dangerous than walking between the rails of the track, though the path was upon the top of an eight or ten-foot unguarded fill.

The negligent omission of duty averred in the declaration as the ground for damages for the injury, was the failure of defendant's agents to ring a bell or sound a whistle or require one of its employees to stand upon the rear car of the train, when backing onto the main track, until it had completely effected that operation; this upon the theory that by the first method deceased would have been apprised of the train movement, and by the second the employees would have observed the peril of his position and taken steps to avoid the injury. The rear flagman of the train did ride on the end car from the time it began to withdraw from the siding until it had passed the public crossing at that point and reached the freight depot, but not until it had completely resumed its position on the main track. He dismounted when it was opposite the depot, for the purpose, it appears, of assisting in loading one of the cars making up the freight train. However, he testifies that after dismounting from the train, he looked down the track in the direction in which it was moving and discovered no one on it. These are the salient facts clearly established by the proof. The only pertinent question of importance is, whether there was, under the circumstances detailed, such duty as plaintiff

contends and such breach thereof as imposes liability upon defendant for decedent's death.

The testator, possessed, as he is shown to have been at the time of his death, and in the full and complete enjoyment, of all his mental faculties and without physical impediments save one, and according to his daughter's husband that was only slight, cannot, through his executor, rely upon the doctrine or rule of law applied in the case of infants of tender age, helpless persons, or animals, trespassing upon the tracks and other property of railroads and injured or killed under like or similar circumstances. The propriety, or, humanly speaking, the necessity, for the application of this rule to cases of injury to persons and property of the kind mentioned finds ample illustration in *Stuck* v. *K. & M. Ry. Co.*, a case twice before this court, the opinion relied on by plaintiff's counsel being found in 76 W. Va. 453, and *Prok* v. *N. & W. Ry. Co.*, 75 W. Va. 697. In the former, the plaintiff, who was seriously injured, but survived, was about ten years old, and immediately before the injury was in full view of the engineer of the on-coming freight train for a distance of about 1,400 feet, though the engineer and brakeman swear they did not see him during the time it took the train to cover that distance. In the latter, Prok's decedent, who was crushed under a backing engine, was a girl but four years of age. When read in connection with these facts, in the light of which they must be read, the opinions rendered in these cases cannot be said to include adult trespassers in possession of all their faculties, mental and physical, when injured, provided always their presence upon the track was not discovered by the company's employees in time to avoid injuring them. Many of our decisions announce and enforce the rule, with the qualification, however, that such agents must exercise reasonable diligence to prevent injury at public crossings. So that, considering the ages of the persons injured or killed in the Stuck and Prok cases, the rule they announce cannot, as we have said, be extended to include trespassers on railroad property who have unimpaired use of the faculties necessary, if used, to foresee and perceive the danger of injury to them while upon such property, unless the employees of the

company, being aware of the danger, do nothing to protect them from injury even though they be trespassers. Certainly there was no intention to enumerate them with infants, or the helpless, or animals, and declare them entitled to the same protection against their own indifference to their own personal safety in situations fraught with peril as if actually included within such classification. The Stuck and Prok cases were dealing with injuries to infants, whose immature and undeveloped powers of discernment do not qualify them to appreciate and avoid the consequences of their own immaturity and rashness. To include deceased as one entitled to the benefit of that rule would be against the countervailing weight of authority upon that subject, and certainly against the decisions of this court, unless the Stuck and Prok cases are exceptions. That they are not so to be considered and were not so intended seems clear from our later decisions which are consonant with the general rule as to railroad liability for injury to adult trespassers.

*Blagg* v. *B. & O. R. Co.,* 83 W. Va. 449, correctly lays down the law properly applicable to the facts and circumstances of this case. As decedent was not an employee or agent of the company, and did not receive the injury at a public crossing, and had not that morning transacted any business with the company, he necessarily was on its right of way without authority from it, express or implied. His use of the track as a walkway at a place where pedestrians were accustomed to walk for their own convenience, with the presumed knowledge and acquiescence of the company, constituted him at most a mere licensee, towards whom the railroad owes no other or higher duty than it owes to a trespasser. In other words, as this court has repeatedly held, the company owed him no duty except to avoid the infliction of wanton or wilful injury after its agents became aware of his presence on the railroad track. As said in the Blagg case, one, not in defendant's employment, who, with other pedestrians, customarily uses a portion of the railroad track, not at a public crossing, is at most a mere licensee, and as such cannot require the company to exercise any greater degree of care for his or their protection than for those tres-

passing upon its property, and as to whom the only duty it owes is the exercise of due care in their behalf after its employees discover their presence on its tracks.   The railroad, because necessarily a dangerous as well as useful instrumentality, is itself notice and warning to all such persons as possess the ability and capacity to care for themselves while on the company's property.   There is little, if any, difference in facts on the question of liability for the death of Bennett involved in that case and for the death of Grubb in the circumstances detailed.   The former was on the track in front of the approaching train, but for some reason no member of the train crew saw him before the collision, or not soon enough to avoid killing him. The legal principle applied there is equally applicable and controlling here, and shows the applicability of defendant's mandatory instruction, refused.

Nor do the decisions in *Roaring Fork R. Co.* v. *Ledford's Adm'r,* (Va.), 101 S. E. 141, and *Gunter's Adm'r* v. *Southern Ry. Co.,* (Va.), page 885 of the same volume, when correctly understood, assert a contrary doctrine; rather, they accord with what we have said.   The death of Ledford was due to reckless indifference on the part of the engineer, in the plain view of whom Ledford was walking between the rails of the railroad track apparently unconscious of the presence of the approaching engine.   The court found that after the engineer had seen deceased on the track a quarter of a mile away, he paid no further attention to him, supposing that he had seen the engine, taken warning and disappeared from view, when in fact he had not—a clear violation of the duty manifestly due even a trespasser after being discovered on the track.   In the other case the facts were very similar, for the engineer saw the young lady on the track five hundred yards distant from the train, apparently oblivious of her hazardous situation, and did not exercise due care to prevent injury to her.   The case turned solely on the doctrine of "the last clear chance."

The case we have discloses no such indifference or negligence. It is proper, though unnecessary, to remark that the flagman who rode the train down as far as the freight depot says he did look farther down the track to ascertain whether the passen-

ger train had disappeared, and that while so looking he discovered no one on or near the railroad track.

To the extent instructions given or refused are inconsistent with the principles herein stated, they were improperly given and properly refused, and certainly defendant's mandatory instruction was applicable to the facts established by the proof and therefore should have been given.

The company's objection to the remark attributed, at least by two and perhaps by other witnesses, to decedent, when removed from beneath the cars, to the effect that when he entered upon the track he looked up and down and saw no train in either direction, is not well founded. This remark of decedent, we think, falls within the *res gestae* rule, and evidence proving it was properly admitted. *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587; *Blagg* v. *B. & O. R. Co.,* 83 W. Va. 449.

For the foregoing reasons, we reverse the judgment, set aside the verdict, and remand the case for new trial.

*Reversed and remanded.*