# CHARLESTON.

Koontz *v.* Whitney.

(No. 6634)

Submitted April 22, 1930.    Decided April 29, 1930.

. *W. H. Haynes* and *C. R. Summerfield,* for plaintiff in error.
*Hubbard & Bacon,* for defendant in error.

Lively, President:

On October 1, 1928, plaintiff had climbed ten or twelve feet above the ground in some bushes or saplings in the edge of a woodland in a place remote from dwellings, and was picking wild grapes in a basket; defendant, while hunting squirrels with a shotgun loaded with No. 4 squirrel shot, and perceiving a movement in the bushes and grapevines about seventy-five or eighty feet away from where he was standing, at first concluded it was a pheasant in the grapevines, and a minute or so later upon seeing a small gray object therein, concluded it was a squirrel, and fired thirty-seven shot into the plaintiff's body, right arm, and leg. Thirty-two shot entered the right thigh, four

shot entered the right arm, and one shot entered the body. Defendant summoned aid immediately, and went with him to the hospital; seven of the shot were removed, and he was discharged therefrom October 11th. Defendant paid the hospital charges.

This action is to recover damages for the injuries thus inflicted and charged to have been wrongfully, carelessly, negligently, and wilfully inflicted. The jury awarded $50 damages. Plaintiff moved to set aside the verdict on the ground that it was inadequate, and contrary to the law and evidence; because of error in the instructions; and because of rejection of proper, and admission of improper evidence. The motion was overruled and judgment entered upon the verdict. Plaintiff prosecutes error.

We will consider the alleged errors in the order set out in plaintiff's brief. The first error is based on the rejection of evidence relating to the location of the basket hung up by plaintiff in the grapevines at the time he was shot. The rejection of this evidence was excepted to at the time it was offered; there was no special bill taken, nor was it made a basis of the motion to set aside the verdict, and therefore .cannot be considered here. *Dransfield* v. *Boone-Armstrong Motor Co.*, 102 W. Va. 370, 135 S. E. 286; *State* v. *Noble*, 96 W. Va. 432, 123 S. E. 237.

The second and third assignments of error, raised by the instructions, involve the standard of care to be exercised by a person using a firearm while hunting. Plaintiff's theory, as expressed in instruction No. 5, placed a duty upon defendant "to make the necessary investigation to ascertain whether or not the object he was shooting at was a squirrel." The court refused the instruction, amended it, and, as given, required the defendant to exercise that degree of care exercised by a reasonably prudent man under all circumstances. Did the court err in the standard of duty required of defendant? At common law where one was injured by the discharge of a gun in the hands of another, the only defense available was that defendant was utterly without fault. The modern doctrine, however, has modified this rule, and places the liability upon negligence. *Annear* v. *Swartz*, 46 Okl. 98, 148 P. 706, L. R. A. 1915E, 267;

*McLaughlin* v. *Marlatt*, 296 Mo. 656, 246 S. W. 548, 549. The cases reflect a contrariety of opinion on the standard of duty required of a person using a firearm while hunting. The plaintiff contends that defendant's use of a dangerous instrument required him to use extraordinary care or the highest degree of care in the use thereof.

We cannot subscribe to the theory that defendant owed "the highest degree of care." As stated in *Rudd* v. *Byrnes*, 156 Cal. 636, 105 P. 957, 959, 26 L. R. A. (N. S.) 134, 20 Ann. Cas. 124: "The rules of law governing actions for injuries caused by the discharge of firearms are not different from the rules governing actions for any injuries claimed to have been inflicted by the negligence of the defendant." In *Merrill* v. *Torpedo Co.*, 79 W. Va. 669, 92 S. E. 112, L. R. A. 1917F, 1043, in considering an instruction which approved the term "highest degree of care," where defendant was in possession of nitroglycerin, the court stated: "The term 'highest degree of care,' as used in the instruction, are qualified by the phrase that follows them, 'to take every reasonable precaution to prevent explosion.'" Many courts require a "high degree of care." Are the terms "a high degree of care" and "extraordinary care" inconsistent with the instructions given by the lower court? We think not. Ordinary care is that degree of care which, under the same or similar circumstances, would ordinarily be exercised by an ordinarily prudent person. 45 C. J. 683. In *McLaughlin* v. *Marlatt*, supra, it is stated that, "owing to the danger attendant upon the use of firearms, ordinary care is a very high degree of care." It was held in *Morrison* v. *Power Co.*, 75 W. Va. 608, 84 S. E. 506, 508, that in handling so dangerous an agency as electricity "a high degree of care is not unreasonable." But the court stated: " 'Reasonable care' and 'negligence' are relative terms and depend upon the circumstances and exigencies of the particular case. The greater the danger to others from failure to exercise care, the greater is the degree of care required." The standard of duty is constant; the degree of care to determine the duty is variable and is dependent upon the circumstances, such as the nature of the instrumentality,

the time, place, and status of the person injured. Note, 53 A. L. R. 1205. The circumstances increase the degree of care; the care is always commensurate with the danger likely to be produced by negligence. "The test of care is not whether in degree it should be slight, ordinary, or extreme care, but commensurate care, due care under the circumstances." *Campbell* v. *Railroad Co.*, 107 Minn. 358, 360, 120 N. W. 375, 376, 22 L. R. A. (N. S.) 190. See also *Markiewicz* v. *Thompson*, 220 App. Div. 311, 221 N. Y. S. 590; *O'Barr* v. *U. S.*, 3 Okl. Cr. 319, 105 P. 988, Syl. 4, 139 Am. St. Rep. 959; *Bizzell* v. *Booker*, 16 Ark. 308; *Webster* v. *Seavey* (N. H.) 138 A. 541, 53 A. L. R. 1202. This discussion likewise disposes of plaintiff's criticism of defendant's instructions 2, 2a, 6, and 10.

The plaintiff also assigns as error the giving of defendant's instructions 3 and 9, which read as follows:

Instruction No. 3: "The Court instructs the jury if you believe from the evidence that the plaintiff Koontz on the 1st day of October, 1928, during squirrel season went into the woods and climbed into a tree to gather wild grapes and that to his knowledge, his body was almost altogether hidden, by dense foliage at the time he was injured and that he did not maintain a lookout for hunters who might approach, you may take these facts into consideration in determining whether or not the plaintiff Koontz was guilty of negligence contributing directly and proximately to his injuries, and if you should find he was guilty of such negligence you should return a verdict for the defendant."

Instruction No. 9: "The Court instructs the jury that even if you believe from the evidence that the defendant Whitney was guilty of negligence in firing the shot you should nevertheless find for the defendant if you further believe from the evidence that the plaintiff was also guilty of negligence which contributed directly and proximately to his injury."

We find no error in these instructions. Whether plaintiff was contributorily negligent was a question for the jury. It is not necessary that there be a great mass of evidence proving a fact to entitle a party to have an instruction as to the law applicable to the evidence. "Where there is such evidence, of however little weight it may appear to be to the court, or how-

ever inadequate, in its opinion, * * * it is best and safest for the court not to refuse to give the instruction asked for, if it propounded the law correctly." *Hopkins* v. *Richardson*, 9 Grat. (Va.) 485, 496; *Carrico* v. *Ry. Co.*, 39 W. Va. 86, Syl. 11, 19 S. E. 571, 24 L. R. A. 50; *Myers* v. *Cook*, 87 W. Va., 265, Syl. 3, 104 S. W. 593.

It is the contention of the plaintiff's counsel that, had proper instructions been given, the jury would have awarded a greater amount of damages. It is difficult to perceive such a result. The questions of liability and damages, though generally questions for the jury, are distinct and separable. The jury was told to consider two questions. (1) Was defendant negligent? (2) If so, what are plaintiff's damages? The former question having been answered in the affirmative, the jury then assessed damages at $50. In plaintiff's fourth assignment of error, he complains that the verdict is inadequate and contrary to the evidence. In this contention a majority of the court (three members) feel there is merit. While plaintiff's testimony that he did not work for three months after his injury is contradicted by defendant's showing that he did some work during November and December following his injury, there is no showing that he did any work during October. Surely his time for that month was of some value. H. D. Propps testified that plaintiff was unable to do some work for him immediately after he left the hospital, and for two or three months thereafter had to employ a helper to do work which plaintiff could not do because of his injury. Defendant paid for professional services effecting plaintiff's cure, so that, under the evidence, plaintiff is entitled to compensation for his sufferings and for loss of ability to work. The law, without fixing any definite rule for measuring compensation in actions for personal injuries, places a duty upon the jury to determine what is a proper compensation for each injury. The amount may be so excessive or so inadequate as to shock one's conscience. It may be that the court might fix a larger sum.

In *Landau* v. *Farr*, 104 W. Va. 445, 140 S. E. 141, 142, plaintiff, sixty-five years of age, was injured by a fall of an elevator in the hotel of defendant. The bones of her right leg were fractured; the heel of her left foot was broken; her injuries

had occasioned and continued to give her great pain and discomfort; and her right leg was from one-half to three-fourths of an inch shorter than the other. The jury awarded her $1,000. This court refused to set aside the verdict, stating that "judicial interference is never permissible, unless the compensation is so small as clearly to indicate that the jury was influenced by improper motives." In *Kennedy* v. *Coal Co.*, 72 W. Va. 635, 78 S. E. 788, 789, plaintiff's foot was so badly mashed that a portion had to be amputated. The jury awarded him $200. This court refused to set aside that verdict, but stated: "But plaintiff proved no pecuniary loss * * * the verdict must have been intended to compensate him only for his pain and suffering and permanent injury." In the instant case, plaintiff is entitled to compensation for loss of time, which, under the evidence, may be reasonably ascertained, and a majority of the court (three members) is of the opinion that a finding of $50 is not warranted by the evidence introduced.

*Verdict set aside; cause remanded; new trial awarded.*

HATCHER, JUDGE (dissenting).

Being of the opinion that the result of this decision is not consistent with the principles to which this court is committed by *Landau* v. *Farr, supra,* and cases there cited (see pages 447-449 of 104 W. Va., 140 S. E. 142), I respectfully dissent.

I am authorized to say that LIVELY, PRESIDENT, concurs in this note.