TEDDY DELANO WADDELL, *An Infant, Etc.*

v.

THE NEW RIVER COMPANY

(No. 10749)

Submitted April 18, 1956.        Decided June 26, 1956.

*Fletcher W. Mann,* for plaintiff in error.

*Benjamin D. Tissue, Leo Bridi,* for defendant in error.

BROWNING, PRESIDENT:

This is an action of trespass on the case instituted in behalf of Teddy Waddell, a boy 14 years and 7 months of age, by his mother and next friend, to recover damages for the alleged injuries sustained by the infant plaintiff when he climbed a guy wire attached to a power pole belonging to the defendant, The New River Company, and grasped an uninsulated wire, 23 feet and 10 inches above the ground, carrying 2,300 volts of electricity. The declaration charges the defendant with negligence in using uninsulated wire, in failing to provide warning signs, and in placing two guy wires in such relation to each other that an infant might, by placing his feet on the lower wire and his hands on the upper, climb such wires to a point where he could come into contact with the uninsulated high voltage power line.

The plaintiff resided with his family in the Town of Skelton, a mining community in Raleigh County. The town and the land surrounding it for some distance in all directions, including the land between Skelton and the power pole, where the accident occurred, were owned by the defendant. To reach the place where the injury occurred from Skelton, it is necessary to climb a small knoll, go down across a hollow, then up another small knoll. The power pole in question is situated on the far side of this second knoll. Approximately 150' below the power pole is a small "Cabin", and 600' below that is a small ravine with a pool of water sometimes used as a swimming hole.

The plaintiff introduced evidence to the effect that children in and around Skelton were accustomed to playing all over the hills in this general area; that they frequently, during the summer, stayed overnight at the "Cabin"; that they had grapevine swings in the vicinity, and often went swimming in the pool; that some of the children had played on the guy wires at times prior to the accident; that there were no warning signs in the vicinity; and that the current carrying wires were uninsulated. The plaintiff attempts to impute knowledge of the fact that children were accustomed to playing in this vicinity to the company officials by testimony that the Gillespie boys, children of the mine superintendent, were among those who played in this area.

The defendant introduced evidence that the distance from plaintiff's house to the power pole is 1,385'; that the first 500' is open or cleared, and the remaining 885' is woodland; that it is entirely on the property of the defendant, and there are no public roads or ways nearer than 1,525' from the point of the accident; that the area is grown up with underbrush and difficult to get to; that the power line and poles were properly constructed and guyed in accordance with the best usage and practice of the electrical industry; that high voltage lines in rural areas are seldom, if ever, insulated or wrapped; and that, while the pole in question could have been guyed by a push brace, or by the use of other poles and wires, such methods would have been impractical in the instant case. The mine superintendent denied any knowledge in behalf of himself or other company officials that children were accustomed to playing in this area, but admitted that no warning signs were placed in the vicinity of the pole.

Photographs, introduced in behalf of the defendant, and plaintiff's testimony, indicate that the "swimming hole" is hardly worthy of that designation. The plaintiff on direct examination, in referring to the activity of his companions and himself a short time prior to his in-

jury, stated that we "played around in that mud, or the water hole, or whatever you want to call it." It was created by workmen damming a stream to secure water while constructing the power line. The "Cabin", constructed of poles in 1951, had neither doors nor windows, and could be entered only by crawling through a hole in the top of the structure.

The jury returned a verdict in favor of the plaintiff in the amount of $10,000.00, and judgment was entered thereon, to which this Court granted a writ of error and supersedeas on June 4, 1955.

Defendant assigns as error: (1) The court's action in permitting the case to go to the jury, and, also, in refusing to give a peremptory instruction in behalf of the defendant on the ground that no negligence on the part of defendant had been shown; (2) In giving plaintiff's instruction No. 9, as amended; (3) In refusing defendant's instructions Nos. 2, 3, 4, 6, 8, 9, 10, 11, 12 and 14; (4) In refusing to hold that plaintiff was contributorily negligent; and (5) In holding defendant should have foreseen or anticipated plaintiff would climb the pole and come into contact with electric current.

This Court, having found that the trial court committed reversible error in permitting the case to go to the jury upon the question of the primary negligence of the defendant, it is unnecessary to discuss any other assignment of error.

The plaintiff was either an invitee, licensee or a trespasser. In the law of negligence, and with reference to trespasses on realty, invitation is the act of one who solicits or incites others to enter upon, remain in, or make use of, his property or structures thereon, or who so arranges the property or the means of access to it or of transit over it as to induce the reasonable belief that he expects and intends that others shall come upon it or pass over it. To constitute a person a licensee upon the premises or property of another, it must be shown that he is

there by permission or authority of the owner or his authorized agent. The permission and authority amounting to a license must be expressly or impliedly granted, and mere sufferance or failure to object to such person's presence upon the property of another is insufficient within itself to constitute a license, unless under the circumstances that permission should be inferred. A trespasser is one who goes upon the property or premises of another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience, and not in the performance of any duty to the owner.

The plaintiff was not an invitee. Applying the facts of the case to the decisions of this Court, it is immaterial whether he was a licensee or a trespasser. The duty owing to him by the defendant was the same in either case. *Evans* v. *Carter Coal Co.*, 121 W. Va. 493, 5 S. E. 2d. 117; *Robertson* v. *Coal & Coke R. Co.*, 87 W. Va. 106, 104 S. E. 615; *Ross* v. *Kanawha & M. R. Co.*, 76 W. Va. 197, 85 S. E. 180; *Woolwine* v. *C. & O. R. Co.*, 36 W. Va. 329, 15 S. E. 81.

The so-called attractive nuisance doctrine is not recognized in this State, and the rule to that effect was reasserted in the recent case of *Harper* v. *Cook*, 139 W. Va. 917, 82 S. E. 2d. 427. While this Court has held that ordinarily children are not exempt from the general rule as to the duty owing by the owner of premises to invitees, licensees and trespassers, it held in *Adams* v. *Virginian Gasoline and Oil Co.*, 109 W. Va. 631, 156 S. E. 63, that; "* * * this rule does not apply where there is an exposed and unguarded danger, known to the proprietor, and where it is also known to the proprietor (a) that children are in the habit of resorting for play to his property, at the place of danger, or in its immediate vicinity, or (b) that children are actually present at the time and place of danger. In such situations, the proprietor must exercise reasonable care to avoid injuring the children, and whether such care has been shown is generally a question of fact for jury determination. * * *" Where

such a condition exists or is created upon the property of the owner, or other person having the control and use of the property, the care to be used to protect children who are upon such property as licensees or trespassers is the care of an ordinarily prudent and cautious person under similar circumstances. Reasonable care and negligence are relative terms, and the degree of care required must be commensurate with the dangers to be avoided. *Koontz* v. *Whitney*, 109 W. Va. 114, 153 S. E. 797; *Morrison* v. *Power Co.*, 75 W. Va. 608, 84 S. E. 506.

In the annotations to the case of *United States Zinc & Chemical Company* v. *Van Britt, et al.*, 258 U. S. 268, 66 L. Ed. 615, found in 36 A.L.R. 28, at page 294, there is the following summary of decisions respecting injuries to children who are trespassers, invitees or licensees:

"To make out a case against the person responsible for the danger, there must appear:

"First. That the injured child was too young to understand and avoid the danger.

"Second. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.

"Third. That there was a strong likelihood of accident.

"Fourth. That the danger was one other than those ordinarily encountered.

"Fifth. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances."

Although this Court has refused to adopt the attractive nuisance doctrine, or follow the rule of the turntable cases, an examination of the cases indicates that in instances where an instrumentality or condition of property or premises, dangerous to children, is created or placed at a location where children "have a right to be", the person responsible for it has a duty to use ordinary

care to prevent injury to a child thereby. The final test is whether the person in charge of, or maintaining, such an instrumentality should reasonably anticipate or forsee that a child would be injured thereby, and in each case this question must be determined by the facts therein. A review of the decisions of this Court upon the question, particularly as regards the maintenance of high voltage electric wires, is necessary in this opinion if it is to serve its purpose.

The cases uniformly hold that where electric wires are in easy reach without the aid of artificial means, the issue as to liability becomes at least a jury question. *Snyder.* v. *Wheeling Electrical Co.,* 43 W. Va. 661, 28 S. E. 733; *Thomas* v. *Wheeling Electrical Co.,* 54 W. Va. 395, 46 S. E. 217; *Love, Administrator* v. *Virginian Power Co.,* 86 W. Va. 393, 103 S E. 352; *Bice* v. *Wheeling Electrical Co.,* 62 W. Va. 685, 59 S. E. 626.

In *Thornburn* v. *City and Elmgrove R. R. Co.,* 65 W. Va. 379, 64 S. E. 358, a judgment, upon the verdict of a jury for the administrator of the estate of a deceased boy of fourteen years, was affirmed when the evidence showed that the boy's death resulted from his coming in contact with an electric wire, heavily charged with electricity, while walking on the coping of a bridge covering. "* * * A side wall three feet high and two feet wide, with coping on the top, and beveled or tapering off at each side, but leaving a level surface about fourteen inches wide," which "guarded each side of the bridge. The top of this coping was constantly used by school children and others as a walk in crossing the bridge, although there was a side walk four feet wide on the inside and along the wall built over the bridge. The top of the coping had been so used, and used so long in this way, as to have become much worn by the feet.* * *" There was evidence before the jury that a person standing on the coping could reach the electric wire.

In the case of *Parsons* v. *Appalachian Power Co.,* 115

W. Va. 450, 176 S. E. 862, the evidence showed that a boy eleven years of age climbed into the superstructure of a bridge spanning the Guyandotte River in Logan County, and came in contact with an electric wire of the defendant which was charged with 6,600 volts of electricity, and thereby lost his life. The bridge was a public one used by adults and school children daily. In the opinion the Court said: "* * * There is evidence also that children had, for a number of years, been accustomed to climbing onto the superstructure of the bridge, and that on several specific occasions witnesses had seen boys playing in the superstructure of the bridge." There was no evidence that officials or employees of the Power Company had knowledge of this conduct. The first syllabus point states that: "It is not necessary to prove actual knowledge on the part of the representatives of a corporation transmitting electricity of the fact that children were accustomed to climb onto the superstructure of a public bridge where its high voltage wires were strung, in order to place upon the company the duty of exercising a high degree of care for their safety. Proof showing circumstances from which the company's representatives should have gained such knowledge is sufficient for the purpose."

This Court reversed the ruling of the trial court in *Love, Administrator* v. *Virginian Power Co., supra,* sustaining demurrers to original and amended declarations, alleging that a seven year old boy was killed by coming in contact with an uninsulated electric wire maintained by the defendant which was four feet above the top of a slate pile. The declaration alleged that the defendant knew, or should have known, that children of miners living in that area had long been accustomed to playing upon the slate pile, and had made no effort to safeguard and protect them by removing or elevating its electric wires. Cp. *Martino* v. *Rotondi,* 91 W. Va. 482, 113 S. E. 760; *Richards* v. *Hope Construction and Refining Co.,* 121 W. Va. 650, 5 S. E. 2d. 810; *White* v. *Kanawha City Co.,* 127 W. Va. 566, 34 S. E. 2d. 17.

Two of the more recent decisions of this Court, the first strongly relied upon by the plaintiff in error, and the second by the defendant in error, are *Musser* v. *N. & W. Railway Co.*, 122 W. Va. 365, 9 S. E. 2d. 524; and *Reed* v. *Janutolo*, 129 W. Va. 563, 42 S. E. 2d. 16. In the *Musser* case, a thirteen year old boy was killed while standing on a public bridge by dangling a chain, with a short wire at the end thereof, from a "water box" on the bridge, a distance of 8 or 9 feet to where it came in contact with an electric wire, maintained by the defendant, carrying 11,000 volts of electricity. In a three to two decision, this Court reversed the action of the trial court in setting aside a directed verdict for the defendant, reinstated the jury verdict for the defendant, and entered judgment here in defendant's favor. The third syllabus point states the law of the case in so far as it may be material to the present litigation: "A person in charge of or maintaining an instrumentality inherently dangerous is not liable to one who is injured thereby in a manner which could not be reasonably anticipated." In the opinion, the Court said: "We do not think that the defendant here reasonably could have anticipated that this boy would have and use a chain at least eight or nine feet long to contact its wires, no more than it could anticipate that a boy would throw a wire over its uninsulated trolley wires. In cases involving the latter state of facts, it is generally held that the maintenance of uninsulated overhead wires is not actionable. * * * " While quotations from dissenting opinions are usually not pertinent, it is interesting to observe the reasoning of the dissenting Judges: "In my judgment, there cannot be made any apt comparison between situations such as here presented and cases wherein a boy or other person on the ground makes contact, against the force of gravity, with a trolley wire many feet over his head. In such supposititious case, because of the more positive effort which would be involved in making contact, it could not properly be held that the owner of the electric wire should reasonably have anticipated the unusual con-

duct mentioned. And, even if the conduct were antici-
pated, there would be nothing he could do about it if the
trolley system were to remain in service. But where
there is a public passageway over trolley wires there may
reasonably be anticipation of contact such as at bar, and
the danger could readily be minimized or altogether
averted by the installation of guards or shields."

In the *Janutolo* case, the deceased, a boy under four-
teen years of age, was killed by the falling of stones
from the top of an excavation made by a strip coal min-
ing lessee near the home of the deceased. The evidence
showed that the defendant and his employees, acting un-
der his instructions, knew that children played in the
vicinity of their operations, and had chased children from
the scene on several occasions. In stating the facts in the
opinion, the Court said: "* * * D. H. Law, defendants'
steam shovel operator, who had made the test hole for
defendants, testified that when school was out he
noticed children go by the test hole, and on the evening
decedent was killed, he saw and heard about 'half a dozen'
children playing near the test hole." The third syllabus
point says: "Where in an action for wrongful death of
a boy slightly under the age of fourteen years, it appears
that the owners and operators of a strip coal mining
lease, experienced in excavating earth and stone, made an
excavation in soft sandstone and soft coal, in the course
of their operations, and with knowledge that children
were accustomed to pass the same in going to and from
school and in play, and that the stone was of the kind
and quality which would sometimes fall, left it unguard-
ed and without sign or warning of danger, the questions
of whether the lessee was guilty of negligence, and, if so,
whether the decedent assumed the risk in entering such
excavation where his death occurred, were for jury
determination."

It will be observed that none of the cases which have
been discussed is directly in point. *Mayfield Light Co.*
v. *Webb's Administrator*, 29 Ky. 395, 111 S. W. 712,

however, is very similar factually to this case. There, a boy eleven years old ascended guy wires, four feet apart, attached to the ground from a pole at an angle of forty-five degrees, came in contact with an electric wire of high voltage, and was killed. The power pole in the *Mayfield* case was located on a public street, easily accessible to children. The court, in holding that there was no primary negligence by the defendant, stated: "As long as electric light wires are not put under ground, they must be put upon poles, and, where they are placed above the street as high as 18 feet, the company should not be required to anticipate that children will climb up to the wires and get hurt. Guy wires are necessary on high poles at street corners where the line turns. A guy wire placed on a high pole to keep it in place, or some such contrivance, cannot well be dispensed with. Such a wire is not a dangerous instrumentality, attractive or alluring to children within the meaning of the Turntable Cases. The little boy was a trespasser upon the defendant's wire, and being a trespasser, he cannot complain that the premises were unsafe. Children, no less than adults, when they trespass upon the property of another, take the risk unless the circumstances bring the case within the principle of what is known as the Turntable Cases."

It is clear from the evidence in this case that the power line of the defendant, at the place where the plaintiff was injured, ran through a wooded, uninhabited area, and that it was constructed and maintained in accordance with the best usage and practice of the electrical industry. It is true that upon cross-examination, one or more of the witnesses for the defendant admitted that it would have been possible to separate the guy wires by a greater distance, making accessibility to the wires charged with electricity more difficult by having installed what was referred to as a stub pole, and attaching to the stub pole another guy wire which would also run into the ground to the rear of it. However, this Court held in the *Musser* case, *supra*, that: "Even if the instrumen-

tality is dangerous, care need be taken only in a degree which is commensurate with the circumstances and such duty to exercise care does not require the operator of a dangerous instrumentality to foresee or anticipate extremely unusual happenings."

This Court has said in *Butcher* v. *Stull,* et al., 140 W. Va. 31, 82 S. E. 2d. 278, and other cases, that a person who comes to an appellate court with a verdict of a jury, approved by the trial court, is in the strongest position known to the law. However, in *Wickline* v. *Monongahela Power Company,* 139 W. Va. 732, 81 S. E. 2d. 326, it is held that this Court has the same duty to set aside the verdict of a jury, and reverse the judgment taken thereon, if the verdict returned is without evidence to support it, or is plainly wrong, as it does to uphold a verdict and judgment which are supported by the evidence. These principles are well established by prior decisions of this Court, although it is never easy to determine in a particular case where the province of a jury ends and that of a court begins upon questions of fact. That question is discussed in *Butcher* v. *Stull, et al., supra, and Bower, Adm'r.* v. *Brannon,* 141 W. Va. 435, 90 S. E. 2d. 342.

To permit this verdict to stand it must be held that the defendant should have anticipated that a person living in the Town of Skelton or nearby, physically capable of doing so, would travel several hundred feet into woodland, ascend a distance of approximately 30 feet up guy wires, running from near the top of a pole to the ground, and, after rising to a point approximately 24 feet above the ground, reach out a distance of about 2 feet and grasp an electrically charged wire. This Court finds, as a matter of law, from the evidence in this case, that the defendant cannot be charged with foreseeing such an eventuality, and, therefore, no factual question for jury determination was presented. The trial court should have given the defendant's peremptory instruction at the conclusion of all of the evidence, and its refusal to do so was reversible error.

The judgment of the Circuit Court of Raleigh County is reversed, the verdict of the jury set aside, and a new trial is awarded.

*Judgment reversed; verdict set aside; new trial awarded.*