DON F. HATTEN, ADMINISTRATOR, ETC.

*v.*

MASON REALTY COMPANY, *et al.*

(No. 12253)

Submitted January 29, 1964.      Decided March 17, 1964.

*Steptoe & Johnson, Carl F. Stucky, Jr., Edward W. Eardley, Sommerville, Hyer & Littlepage, Samuel D. Littlepage,* for appellant.

*William H. Rardin, Jackson, Kelly, Holt & O'Farrell, David D. Johnson,* for appellees.

CALHOUN, JUDGE:

This case involves an action for wrongful death instituted in the Circuit Court of Mason County, arising

from the drowning of an eight-year old boy in a pool of water. The pool of water was created in connection with the installation of a sewer line in a residential development area within the City of Point Pleasant. The area was being developed for residential purposes by Mason Realty Company, a corporation. The sewer line was being installed by the employees of the municipality and at its expense.

The defendants, Mason Realty Company and the City of Point Pleasant, made separate motions for summary judgment based on affidavits, interrogatories with answers thereto, depositions, and the pleadings. By an order entered on September 14, 1962, the Court sustained the motion of the municipality and it was thereby dismissed from the action. By an order entered on September 18, 1962, the court sustained the motion of the Mason Realty Company and it was thereby dismissed from the action. The plaintiff has appealed to this Court from the final judgment of the circuit court which is embodied in the two orders.

The trial court did not make any findings of fact, did not file any written opinion and did not by court order give any hint whatsoever concerning the basis of its rulings. The motions do not disclose upon what ground or grounds they were based. We are, therefore, deprived of the benefit of the trial court's reasoning and of any knowledge of the legal principle or principles upon which the court's rulings were based.

Mason Realty Company, which will be referred to in this opinion as Mason, is the owner of an area known as Meadowbrook Addition within the City of Point Pleasant. A westerly portion of this area was laid off in lots and a plat of the plan of Mason for its development as a residential area was recorded on June 1, 1956, in the office of the Clerk of the County Court of Mason County. This area, with its streets and sewer lines, has been fully accepted by the municipality. The sewer lines therein have been integrated and made a part of the sewer system of the municipality. Lots for the construction of homes

in this development area have been sold to various persons, including the plaintiff.

On February 16, 1961, Mason filed in the office of the Clerk of the County Court of Mason County a plat for the development of the remaining or easterly portion of Meadowbrook Addition. On April 5, 1961, Mason wrote a letter to the mayor and councilmen as follows:

"Point Pleasant, West Virginia

April 5, 1961

"Honorable B. W. Krodel and
      Members of the City Council

Point Pleasant, West Virginia

"Gentlemen:

I am sure you are well aware of the great number of homes that have been constructed and are now occupied in the Meadowbrook Addition to the City of Point Pleasant. We now want to develop the remainder of this addition by paving the streets and putting in the utilities in order that we may continue the sale of lots.

"We are now requesting that the City extend the sewer line on Meadowbrook Drive and Cedar Street, which will complete the sewerage system in this addition.

"We want to take this opportunity of thanking you for your splendid cooperation in the past in assisting us in developing this fine addition to our City.

"Yours very truly,

"MASON REALTY COMPANY

"By JOHN E. BROWN
      President."

It does not appear from the record that there were any oral negotiations or that there was an express contract between Mason and the municipality in relation to the second development project. It does appear, however,

that the proposal embraced in the letter was accepted and acted upon by officials and other representatives of the municipality. Hoyt Jividen testified that he was instructed by Mayor B. W. Krodel to install the sewer line and to supervise its installation. Jividen accordingly did so. All the work in connection with the actual installation of the sewer line was performed by employees of the city. All charges for labor and materials were paid by it. The streets shown on the amended plat, embracing the second development area, were formally accepted by the city council in regular meeting held on November 13, 1961. The sewer lines of the new development area were connected with and made a part of the municipal sewer system. Since that time, each homeowner in the area has been required by the city to pay the usual sewer fees. Mason, on the other hand, complied with the proposal, offer or statement made by it in its letter, by paving the streets embraced in the new development area. In answer to an interrogatory, Mason stated that it obtained no authority from anybody to pave the streets. In an answer to an interrogatory, the city stated that it had not given authority to Mason to pave the streets. We note that, in the final paragraph of the letter, Mason thanked the municipal officers for their "splendid cooperation" in the past, in "assisting us in developing this fine addition to our City." This tends to indicate that Mason and the municipal officers were collaborating in a mutually satisfactory manner in developing the area for residential purposes; and that the project was not wholly a unilateral undertaking by Mason. Mason's letter stated that it planned to pave the streets to facilitate the development for residential purposes in order that it might "continue the sale of lots." It is reasonable to conclude that the paving was not advisable or even possible until after the sewer line was laid by the city.

Less than two months after the date of the letter, the city officers and employees proceeded with the project of extending the sewer line. At the terminus of the sewer line, a hole, approximately ten feet deep and approximately seven feet in diameter, was dug in the ground for

the purpose of installing a manhole. The manhole was planned for the purpose of enabling men to get down to the level of the sewer line in order to service it.

On Thursday, June 8, 1961, workmen on the sewer line project quit work for the day at 4:30 p. m. That evening and night a heavy rain fell. Consequently, work on the project was not resumed on Friday and for that or some other reason work was not resumed on Saturday. As a result of the rainfall and water from a spring in the area, muddy water completely filled the hole; and also filled a shallow depression in the ground around the ten-foot hole. At about 11 o'clock on the forenoon of Saturday, June 10, 1961, while Don H. Hatten, II was wading with other children in the shallow, muddy water, he waded or stepped into the ten-foot hole and was drowned.

On Thursday evening, one or more employees of the city had placed a "barricade" about the hole. This consisted of steel drums placed on end on the ground about fifteen feet apart with boards placed on the top of the drums from one to another. The exact number of steel drums and boards thus placed does not clearly appear. In any event, they were placed in a semicircular manner, but did not completely encircle the depression surrounding the hole. When asked to state the purpose of the barricade, Jividen, the street commissioner, stated, "We didn't want to leave it open so that someone could wreck or drive in there."

The city has not appeared in this Court and, therefore, no written brief was filed and no oral argument was made in its behalf. An answer filed in behalf of the city denies "that there was a dedication and acceptance on or before June 10, 1961, of the street at or near the place where the Plaintiff's decedent was drowned." Among other affirmative defenses, the answer asserts that the acts of the officers and agents of the city in constructing the sewer were *ultra vires;* and that in any event construction of the sewer line was a governmental function which could not give rise to liability on the part of the city for negligence of its officers or agents. Counsel for

the plaintiff contend that genuine issues of fact were presented and that for this and other reasons the trial court was not legally justified in entering summary judgment for either defendant. Counsel for Mason contend that there was no genuine issue of fact; that the streets of this development area were dedicated by the action of Mason in recording the amended plat; that such streets were accepted by the municipality by the acts of its officers and employees in installing the sewer line; and that the summary judgment in Mason's favor was proper.

S. E. Fowlkes, Jr., is an engineer and was a regular employee of Mason on and before June 10, 1961. He was directed by Mason to do the engineering work in connection with the streets and sewers involved in the second development project. He did all work necessary to the making of plans for such engineering work and made plans which were accepted by Mason. The sewer line was laid by city employees in accordance with such plans. In order to enable the city employees to install the sewer line in accordance with the plans, Fowlkes set stakes on the surface of the ground to mark the course of the sewer line and of the ditch in which the line was to be laid. Parallel to such stakes but ten feet to one side, he placed offset stakes on which he designated the depth to which the ditch should be dug. As the work progressed, he set other stakes from time to time in the bottom of the ditch to indicate the proper depth location of the sewer line. Fowlkes testified that he had nothing to do with the digging of the hole and that his plans did not call for a manhole at that place. Jividen, the street commissioner, testified that he had been instructed by the mayor to "check with" the engineer and to complete the construction "According to the engineering plans. According to Mr. Fowlkes."

In an affidavit made by Clayton Schuler, an employee of the city who operated the ditch digger on the project, he stated: "At the time the above sewer was being put in, this Affiant received more instruction and direction from Sam Fowlkes as Engineer of the job as to the actual work in constructing the sewer, than he did from the

Street Commissioner or any other Official of the City of Point Pleasant." An affidavit of like import was made by Albert Scarberry, another employee of the city who worked on the project.

It was known to Fowlkes and to employees of the city that children played about the area prior to June 10, 1961. One city employee actually removed a child from the area after the pool formed. In relation to that child, the city employee testified: "I * * * picked him up and took him around and set him in the road and sent him home to his mother."

The "attractive nuisance" doctrine is not recognized in this state. *Justice, Admr.* v. *Amherst Coal Co.*, 143 W. Va. 353, 359, 101 S. E. 2d 860, 863; *Waddell* v. *The New River Company*, 141 W. Va. 880, 884, 93 S. E. 2d 473, 476; *Harper* v. *Cook*, 139 W. Va. 917, pt. 4 syl., 82 S. E. 2d 427; *White* v. *Kanawha City Co.*, 127 W. Va. 566, pt. 1 syl., 34 S. E. 2d 17. On the other hand, there is recognized in this state that which may be referred to as the "dangerous instrumentality" doctrine. *Waddell* v. *The New River Co.*, 141 W. Va. 880, 93 S. E. 2d 473; *Harper* v. *Cook*, 139 W. Va. 917, 82 S. E. 2d 427; *Tiller* v. *Baisden*, 128 W. Va. 126, 35 S. E. 2d 728; *White* v. *Kanawha City Co.*, 127 W. Va. 566, 34 S. E. 2d 17. "An owner or proprietor of a dangerous instrumentality must exercise reasonable care to avoid injury to a trespassing child, whose presence at the time and place of danger was either known to the proprietor or might reasonably have been anticipated." *Adams* v. *Virginian Gasoline & Oil Co.*, 109 W. Va. 631, pt. 1 syl., 156 S. E. 63. See also *Waddell* v. *The New River Co.*, 141 W. Va. 880, 93 S. E. 2d 473; *Justice* v. *Amherst Coal Co.*, 143 W. Va. 353, 101 S. E. 2d 860.

An artificial pool of water is not in itself a "dangerous instrumentality," but it may be regarded as such if there is in connection with it something in the nature of a hidden danger or trap. *White* v. *Kanawha City Co.*, 127 W. Va. 566, 34 S. E. 2d 17. We believe, therefore, that a jury would be warranted in finding that the pool of water involved in this case constituted a "dangerous in-

strumentality" within the purview of the principles of law referred to above; and that the owner or the one in charge of it owed a duty of reasonable care to the plaintiff's decedent and to other children whose presence in that area might reasonably have been anticipated.

As stated previously, the defendant city asserted in its answer that it cannot be held liable in any event because the construction or installation of the sewer line within the municipality was a governmental function. If such was a governmental function, the city, of course, may not be held liable in damages for the death of the boy, even though it resulted from the negligence of the city's officers, agents or employees. *Gibson* v. *City of Huntington,* 38 W. Va. 177, pt. 4 syl., 18 S. E. 447; *City of Charleston* v. *Beller,* 45 W. Va. 44, 48, 30 S. E. 152, 153; *Shaw* v. *City of Charleston,* 57 W. Va. 433, pt. 2 syl., 50 S. E. 527; *Holsberry* v. *City of Elkins,* 86 W. Va. 487, pt. 2 syl., 103 S. E. 271; *Carder, Admr.* v. *City of Clarksburg,* 100 W. Va. 605, pt. 1 syl., 131 S. E. 349; *Hayes* v. *Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726; *Van Gilder* v. *City of Morgantown,* 136 W. Va. 831, 68 S. E. 2d 746. It is equally clear, however, that a city may be held liable in damages for personal injuries or a death resulting from the negligence of its officers, agents or employees in the performance of proprietary functions. *Hayes* v. *Town of Cedar Grove,* 126 W. Va. 828, 835, 30 S. E. 2d 726, 730; *The City of Wheeling* v. *Benwood-McMechen Water Co.,* 115 W. Va. 353, pt. 5 syl., 176 S. E. 234; *Hyre* v. *Brown,* 102 W. Va. 505, 509, 135 S.E. 656, 658; *Warden* v. *City of Grafton,* 99 W. Va. 249, 128 S. E. 375; *City of Huntington* v. *Huntington Wharf & Storage Co.,* 75 W. Va. 183, 185, 83 S. E. 500, 501.

The principles relating to the liability or nonliability of a municipality, as stated above, are clear and well settled; but courts experience difficulty in determining what functions are governmental and what functions are merely proprietary.

An annotation dealing with liability of a municipality arising from negligence in the construction or repair of

sewers or drains is found in 61 A.L.R. 2d 874. According to decisions of appellate courts listed on pages 877 to 880, inclusive, it appears that they are sharply divided on the question whether the cloak of governmental immunity is available to a municipal corporation in cases of this character. The following appears at pages 893 and 894: "In nearly all cases in which the question has arisen, it has been recognized that where inadequate guards or warning signs have been placed at the site of constructing or repairing sewers or drains, and as a consequence a person is injured, the municipality is liable for such injuries." See also 38 Am. Jur., Municipal Corporations, Section 635, page 338; 63 C.J.S., Municipal Corporations, Section 1049, page 655. The following statement appears in 63 C.J.S., Municipal Corporations, Section 873 at page 253: "Generally, however, the actual construction of sewers and drains is held to be the exercise of a merely ministerial or corporate function, even though the improvement relates to the governmental function of preserving the public health."

We believe that prior decisions of this Court tend to sustain the proposition that the construction or installation of the sewer line by the city represented the performance of a proprietary function. *McCabe* v. *City of Parkersburg*, 138 W. Va. 830, 79 S. E. 2d 87. The Court holds, therefore, that, to the extent that the municipality was engaged in the construction or installation of the sewer line in this case, it was engaged in the performance of a proprietary function; and that it may be held liable in damages for the death of the boy if the death resulted proximately from the negligence of the officers, agents or employees of the city while engaged in the performance of such function.

Inasmuch as there has been no appearance in this Court in behalf of the defendant municipality, we do not know whether it does or does not place serious reliance on the proposition that the acts of its officers, agents and employees in constructing or installing the sewer line were *ultra vires*. However, we do not consider such proposition to be a tenable or sound one. The construc-

tion or installation of the sewer line constituted the performance of a function within the lawful power and authority of the municipality. In this respect, its acts may be contrasted with the legally unauthorized acts of the county court in *Cunningham* v. *The County Court of Wood County,* (decided by this Court on February 25, 1964), 148 W. Va. 303, 134 S. E. 2d 725. The acts of the city's officers, agents and employees in this respect were subsequently ratified and confirmed by the municipality. In such circumstances it is not in a position to assert that the acts were *ultra vires.* 38 Am. Jur., Municipal Corporations, Section 599, page 296.

This Court has stated heretofore that the summary judgment procedure provided by R. C. P. 56 is not a substitute for a trial by the court or a jury of an issue of fact, but it involves a determination that, as a matter of law, there is no genuine issue of fact to be tried; that, as a general proposition, issues of negligence are not susceptible of summary adjudication; that summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry is not desirable to clarify the application of the law; that the question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined; that a party who moves for a summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment; that summary judgment should be denied if there is involved conflicting testimony or varying inferences which may reasonably be drawn from evidence which is uncontradicted; and that even in a case in which the trial judge is of the opinion that he should direct a verdict for one or the other of the parties on factual issues involved, he should, nevertheless, ordinarily hear evidence and upon a trial direct a verdict rather than to try the case in advance on a motion for summary judgment. *Aetna Casualty & Surety Company* v. *Federal Insurance Company of New York,* 148 W. Va. 160, 133 S. E. 2d 770; *Petros* v. *Kellas,* 146 W. Va. 619, 122 S. E. 2d 177.

Questions of negligence, due care, proximate cause, and concurrent negligence present issues of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them. *Evans* v. *Farmer,* 148 W. Va. 142, pt. 2 syl., 133 S. E. 2d 710; *Butler* v. *Smith's Transfer Corporation,* 147 W. Va. 402, pt. 8 syl., 128 S. E. 2d 32; *Lester* v. *Rose,* 147 W. Va. 575, pt. 14 syl., 130 S. E. 2d 80; *Leftwich* v. *Wesco Corporation,* 146 W. Va. 196, pt. 7 syl., 119 S. E. 2d 401; *Brace* v. *Salem Cold Storage, Inc.,* 146 W. Va. 180, pt. 5 syl., 118 S. E. 2d 799; *Spurlin* v. *Nardo,* 145 W. Va. 408, pt. 3 syl., 114 S. E. 2d 913; *Lawrence* v. *Nelson,* 145 W. Va. 134, pt. 1 syl., 113 S. E. 2d 241; *Clay* v. *Walkup,* 144 W. Va. 249, pt. 2 syl., 107 S. E. 2d 498; *Wilson* v. *Edwards,* 138 W. Va. 613, pt. 4 syl., 77 S. E. 2d 164; *Barr* v. *Curry,* 137 W. Va. 364, 371-72, 71 S. E. 2d 313, 317. The province of the jury as the trier of fact is fundamental in our system of jurisprudence. R. C. P. 56, relating to summary judgment, does not create a right on the part of the court to invade the province of the jury, but, on the contrary, the function of the jury as the trier of fact remains unimpaired by that rule.

We are unable to agree that the trial court was warranted in adjudging that no genuine issue of fact was presented and that the nonliability of both defendants appeared as a matter of law. Mason's argument in this Court is based largely on the proposition that, prior to June 10, 1961, there had been a dedication of the streets in the area of the second development; that such dedication had been accepted by the city; and that Mason was thereby ousted from rights and relieved of duties incident to ownership. The formal, express acceptance of the streets by the city occurred later, as we have previously stated. Mason's position, therefore, is necessarily based upon a contention of implied acceptance. Even if we assume that all facts pertinent to a determination of that question are without contradiction or dispute, we believe that different inferences from such facts might be reached by reasonable men. In that connection, we bear in mind that Mason requested that the municipality come upon its land and construct or install

the sewer line thereon; and that, a considerable time after June 10, 1961, Mason paved the streets without requesting or obtaining authority or permission to do so. We believe that additional genuine issues of fact, depending to a considerable extent upon reasonable inferences, were presented concerning the relation of the defendants to each other, and the status each occupied in connection with the development of the area for residential purposes and the construction or installation of the sewer line. Other genuine issues of fact relate to the status of Fowlkes in connection with the sewer line project, the nature and extent of direction and control exercised by him, for whom he was acting and the scope of his authority.

We do not mean by this opinion to imply that there were no genuine issues of fact in addition to those mentioned. We, of course, do not undertake to state what verdict a jury should render as to any or all the three parties to the action. We merely hold that the trial court erred in directing summary judgment for the defendants.

For reasons stated, the judgment of the Circuit Court of Mason County is reversed and the case is remanded to that court for such further proceedings, consistent with this opinion, as may be proper.

*Reversed and remanded.*